**THE MALONEY FIRM, APC**
GREGORY M. SMITH – CA Bar No. 259971 - will comply with LR IA 11-2 within 45 days.
2381 Rosecrans Avenue, Suite 405
El Segundo, California 90245
T: (310) 540-1505 │ F: (310) 540-1507
E: gsmith@maloneyfirm.com

**SILVESTRI LLC**
PHILLIP A. SILVESTRI – NV Bar No.11276
5725 S. Valley View Blvd., Suite 5-902925
Las Vegas, NV 89118
T: (702) 908-3698
E: phillip@silvestri.com

Attorneys for Plaintiff, VERGIL ORTIZ, JR.

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| VERGIL ORTIZ, JR., <br><br> Plaintiff, <br><br> v. <br><br> GOLDEN BOY PROMOTIONS, LLC; and DOES 1-15, inclusive, <br><br> Defendants, | Case No.: <br><br> **COMPLAINT FOR:** <br><br> 1. **DECLARATORY RELIEF;** <br> 2. **BREACH OF CONTRACT;** <br> 3. **INTERFERENCE WITH PERSPECTIVE ECONOMIC ADVANTAGE** <br><br> **DEMAND FOR JURY TRIAL** |

For his Complaint, Plaintiff VERGIL ORTIZ, JR. ("Ortiz"), alleges as follows:

### INTRODUCTION

1. Ortiz is a professional boxer with a record of twenty-four wins and zero losses. Since August 2024, Ortiz has been the World Boxing Commission's Interim Super Welterweight World Champion.

2.      Defendant GOLDEN BOY PROMOTIONS, LLC ("GBP") is a boxing promotion company headed by Olympic gold medalist and former world champion boxer Oscar De La Hoya.  In a prior complaint, filed in this district, GBP described itself as "one of the most successful boxing promotional companies in the world."[1]

3.      GBP has been Ortiz' promoter since his professional debut in 2016.

4.      In May 2024, Ortiz and GBP executed a Promotional Rights Agreement (the "PRA") under which GBP was to promote Ortiz' bouts for three more years, with minimum payments per fight exceeding one million dollars.  <u>A true and correct copy is attached hereto as Exhibit One.</u>

5.      Notably, the PRA allowed Ortiz to terminate it if, for any reason, GBP's contract with its long-term broadcaster, DAZN, ended.

6.      GBP's broadcast contract with DAZN expired on December 31, 2025; on January 8, 2026, Ortiz timely exercised his right to terminate the PRA.

7.      On January 13, 2026, GBP confirmed that its agreement with DAZN had concluded, but argued that because it was negotiating a new DAZN agreement, Ortiz could not terminate the PRA.

8.      Ortiz now seeks confirmation from the Court, by way of his claim for Declaratory Relief, that the PRA has been terminated.  Additionally, Ortiz seeks damages for various breaches of the PRA and GBP's interference with its prospective economic opportunities moving forward.

## PARTIES

9.      Plaintiff VERGIL ORTIZ, JR. is an individual and a citizen of the State of Texas.

10.     Based on GBP's Complaint in *Garcia*, Ortiz is informed and believes that GOLDEN BOY PROMOTIONS, LLC is a Delaware limited liability company whose

---

[1] *Golden Boy Promotions LLC v. Ryan Garcia, et al.,* USDC Nevada Case No.: 2:23-cv-00942-APC-VCF ("*Garcia*").

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

members are citizens of the states of Nevada and Maryland.

11.    The true names and capacities, whether individual, corporate, associate or otherwise, of the Defendants sued herein as DOES 1 through 25, inclusive, are currently unknown to Ortiz, and therefore Ortiz sues these Defendants by such fictitious names.  Ortiz will amend this complaint to allege their true names and capacities when ascertained.  Ortiz is informed and believes and based thereon alleges that each of these fictitiously named Defendants is responsible in some manner for the acts and transactions herein alleged and that Ortiz' damages as herein alleged were caused by their conduct.

## JURISDICTION AND VENUE

12.    The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and Plaintiff and Defendants are citizens of different States.  Specifically, Ortiz is a citizen of Texas, whereas, GBP, through its members, is a citizen of Nevada and Maryland.

13.    The Court has personal jurisdiction over the Defendant and venue is proper in the District of Nevada because GBP is a citizen of Nevada and because GBP has substantial contacts with Nevada including regularly promoting boxing events in Las Vegas and holding a promoter's license issued by the Nevada State Athletic Commission.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION
### The PRA

14.    In May 2024, Ortiz and GBP executed a Promotional Rights Agreement (the "PRA") under which GBP was to promote Ortiz' bouts for three more years, with minimum payments per fight exceeding one million dollars.

15.    Although each of Ortiz' professional bouts to that time had been promoted by GBP, Ortiz was well aware that GBP's CEO and figurehead, Mr. De La Hoya, was a controversial and divisive figure in boxing.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

3
COMPLAINT

16. Although Mr. De La Hoya had legendary boxing career, he has a history of substance abuse and rocky relationships with other boxing promoters. In recent years, he has unprofessionally attacked his peers and other boxing luminaries on social media platforms, including weekly Instagram video rants in which he often concludes by telling various boxers and promoters to f*ck themselves.

17. To protect Ortiz from the ramifications of Mr. De La Hoya's behavior, and other boxing industry forces and factions, the PRA contained a provision (Sec. 3(k)) requiring GBP to work in good faith with other promoters as necessary to negotiate with Ortiz' preferred opponents, and also allowing Ortiz' representatives to directly negotiate with other promoters. The same clause prevented GBP from engaging in negotiations behind Ortiz' back by requiring GBP to fully disclose the terms of any written offer and requiring Ortiz to be a signatory to any agreement related to him fighting.

18. The totality of Section 3(k) is set forth below:

The Promoter agrees to work in good faith with all boxing promoters to assure that Boxer maximizes his exposure and revenue opportunities during the Term. Promoter agrees to work in good faith to try and negotiate with the representatives for any and all opponents Boxer wants to fight during the Term and Boxer and his representatives expressly agree to direct any and all inquiries they may receive from potential opponents to Promoter for purposes of negotiating the terms of a potential bout with Boxer. In the event Promoter receives an offer to provide Boxer a fight from another promoter or broadcast platform under a provision of services ("POS") or similar agreement, Promoter must disclose to Boxer the full value of all compensation offered and will provide Boxer with a copy of such POS or similar agreement and have Boxer included as a party to such agreement. In the event that a third party promoter, broadcaster, or financier wants to negotiate a fight involving Boxer; Promoter, Boxer, and his representatives, will work in good faith to maximize the opportunity for all parties, including but not limited to, as necessary, by Promoter allowing Boxer's representatives to directly negotiate the bout with the third party. Unless the parties agree otherwise, Promoter shall receive a POS fee equal to twenty-five percent (25%) of Boxer's compensation for the bout. Any such bout shall count as one of Promoter's annual guaranteed bouts required by

Section 3(i).

19.     To protect Ortiz from GBP losing its broadcast platform, which would limit GBP's ability to show Ortiz' fights, the PRA contained the following provision (Sec. 10(g)) relating to the relationship between GBP and its broadcaster, DAZN:

> Promoter's distribution relationship with DAZN is a material incentive for Boxer to enter into this Agreement. In the event that Promoter's distribution relationship with DAZN terminates, for any reason, and Promoter does not have an agreement in principle in place for an exclusive distribution relationship with an alternative broadcaster, then Boxer shall have the right to terminate this Agreement. For avoidance of doubt, if Promoter has agreed on all material terms with an alternative broadcaster, but is in the process of negotiating the long form agreement with that broadcaster, Boxer shall not be entitled to terminate this agreement. Boxer's right to terminate must be exercised by written notice within thirty (30) days following Boxer obtaining knowledge of the triggering event, or will be deemed waived.

### The Termination of the PRA

20.     On January 8, 2026, Ortiz, by and through his counsel, sent a letter to GBP seeking confirmation that GBP's broadcast contract with DAZN had expired on December 31, 2025 and, if so, exercising Ortiz' right to terminate the PRA. <u>A true and correct copy is attached hereto as Exhibit Two.</u>

21.     On January 13, 2026, GBP, by and through its counsel, confirmed that the GBP/DAZN agreement had concluded, but asserting that Ortiz did not have the right to terminate the PRA because "…in late October, Golden Boy and DAZN agreed on the material terms of a new Licence (sic) Agreement to cover calendar years 2026 and 2027 and have since exchanged several drafts of the long form agreement documenting those material terms." <u>A true and correct copy is attached hereto as Exhibit Three.</u>

22.     Of course, GBP's incomplete and unexecuted 2026 DAZN contract has no legal impact because "An agreement to agree at a future time is nothing…" (*City of Reno v. Silver State Flying Serv., Inc*., 84 Nev. 170, 176, 438 P.2d 257, 261 (1968).)

5

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

Further, an agreement in principal for a new agreement with DAZN does not fulfill the PRA language requiring an agreement on all materials terms with an "alternative" – meaning different – broadcaster than DAZN.

**Breaches of the PRA**

23.     Even prior to Ortiz' decision to terminate the PRA, GBP took actions that were contrary to its obligations to Ortiz in the PRA.

24.     In the Fall of 2025, boxing fans were clamoring for a bout between Ortiz and popular 147-pound champion Jaron "Boots" Ennis, who planned to move up to fight in Ortiz' 154-pound weight class.

25.     Following Ortiz' bout with Erickson Lubin in November 2025, Mr. Ennis joined him in the ring for a face off and each boxer expressed their desire for the fight to occur in early 2026.

26.     Ortiz instructed GBP to negotiate terms for the bout with Mr. Ennis' promoter, Eddie Hearn of Matchroom Boxing.

27.     It was the hope of Ortiz that the bout, with Mr. Ennis, which was considered to be one of the best matchups in the sport, would attract the eye of Turki Alalshikh, a boxing fan and the chairman of Saudi Arabia's General Entertainment Authority.  At Mr. Alalshikh's direction, Saudi Arabia has been a significant sponsor of boxing matches in the last few years, both in Riyadh and outside of K.S.A., such as the September 2025 bout between Canelo Alvarez and Terence Crawford in Las Vegas.

28.     Instead of working "in good faith with all boxing promoters to assure that Boxer maximizes his exposure and revenue opportunities," Mr. De La Hoya publicly attacked Mr. Alalshikh and Zuffa Boxing, Mr. Alalshikh's new partnership with the leadership of the UFC.  In December 2025, Mr. De La Hoya posted to his Instagram an expletive filled rant insulting the project and all involved.  Through this, and other actions, GBP actively undercut any opportunity to maximize Ortiz' potential earnings from Saudi-backed sponsorships.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

29.    In a December 2025 meeting between GBP and Ortiz' representatives, GBP presented an offer for the bout with Mr. Ennis, and insisted – despite a PRA requirement that Ortiz be offered at least three potential opponents for any bout – that if Ortiz did not agree to the fight that he would be "benched" and not presented with any other opportunity.  GBP also threatened that it would publicly blame Ortiz and his team for the fight with Mr. Ennis not happening if Ortiz did not agree to the sole offer presented.

30.    Although GBP did not disclose it to Ortiz during the meeting, Ortiz later came to learn, through public comments of Mr. Hearn, that there had already been a meeting between GBP, Matchroom Boxing, and DAZN that resulted in a written agreement related to terms for the Ortiz/Ennis fight.  GBP never presented this document to Ortiz, again breaching its commitments in the PRA.

### GBP's Interference with Ortiz' Opportunities

31.    Following Ortiz' termination of the PRA, GBP actively undertook steps to undermine him in the eyes of the boxing public and his ability to negotiate with other promoters.

32.    After receiving Ortiz' termination letter on January 8, 2026, Mr. De La Hoya posted a series of Instagram videos related to negotiations for the bout with Mr. Ennis.

33.    Those videos attacked Mr. Hearn, stated specific monetary demands and deadlines to contract the fight, and then, when the deadlines were not met, stated that all negotiations for the Ortiz/Ennis fight were done.

34.    None of the statements, demands, or deadlines were authorized or agreed to by Ortiz, who had already unambiguously terminated the PRA, effectively firing GBP.

35.    On January 14, 2026, Mr. Rick Mirigian, Ortiz' manager, posted on Instagram, inviting Matchroom and other promoters with an interest in Ortiz to reach out to him.

36.   On that same day, Mr. De La Hoya publicly posted that he was the one leading all negotiations related to Ortiz and threatened legal action against Mr. Mirigian.

37.   Mr. De La Hoya's public outbursts and attacks, after the PRA was terminated, were designed to improperly interfere with Ortiz' opportunities to work with other promoters by creating industry confusion as to GBP's rights – or lack thereof.

38.   They were also the type of efforts to vilify and blame Ortiz and Mr. Mirigian that GBP had threatened when Ortiz turned down the fight offer in December.

## FIRST CAUSE OF ACTION - AGAINST ALL DEFENDANTS
## DECLARATORY RELIEF

39.   Ortiz incorporates by reference as if fully set forth herein each of the preceding allegations.

40.   An actual controversy has arisen and now exists between the parties regarding their rights and obligations under the PRA.

41.   Specifically, Ortiz and GBP disagree whether Ortiz' January 8 letter effectively terminated the PRA.

42.   Ortiz seeks a judicial confirmation that the PRA has concluded and that he is free of ties to GBP.

43.   A swift judicial confirmation is necessary and appropriate to ensure that the prime years of Ortiz' athletic career are not wasted or impaired by GBP.

## SECOND CAUSE OF ACTION - AGAINST ALL DEFENDANTS
## BREACH OF CONTRACT

44.   Ortiz incorporates by reference as if fully set forth herein each of the preceding allegations.

45.   In May 2024, Ortiz and GBP executed the PRA under which GBP was to promote Ortiz' bouts for three more years.

COMPLAINT

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

46.    In the PRA, GBP agreed to work in good faith with other promoters as necessary to negotiate with Ortiz' preferred opponents, agreed to allow Ortiz' representatives to directly negotiate with other promoters.

47.    GBP was also obligated to offer Ortiz at least three potential opponents per bout.

48.    Since the execution of the PRA, Ortiz has done all, or substantially all, of the things required by the PRA.  He was successful in bouts in 2024 and 2025 and undertook all necessary efforts to promote and commercialize the events.

49.    Despite Ortiz' efforts and success, GBP breached the PRA through numerous acts and omissions, including but not limited to:

-    by and through Mr. De La Hoya's numerous public attacks against Ortiz' manager and other boxing promoters and sponsors,

-    by failing to present Ortiz with the requisite number of potential opponents per bout, and

-    by failing to provide him with the written documents generated from the GBP/Matchroom Boxing/DAZN meeting related to the Ortiz/Ennis bout.

50.    GBP's breaches have caused Ortiz to suffer millions of dollars of losses in fight purses and opportunities for other earnings, such as individual sponsorships and endorsements, that come with in-ring activity and success.

## THIRD CAUSE OF ACTION - AGAINST ALL DEFENDANTS
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC
## ADVANTAGE

51.    Ortiz incorporates by reference as if fully set forth herein each of the preceding allegations.

52.    Upon Ortiz' termination of the PRA, GBP knew that Ortiz and his representatives, including Mr. Mirigian, would seek to negotiate bouts for Ortiz against Mr. Ennis, or other opponents.

53.    Although GBP knew that it has been terminated as Ortiz' promoter and had no right to speak for him, GBP caused or allowed Mr. De La Hoya to publicly set terms and deadlines for negotiations and to publicly insist that any discussions for Ortiz' fights had to go through GBP.

54.    GBP knew or should have known that its and Mr. De La Hoya's comments and actions would confuse the boxing public and other promoters and limit the opportunities for Ortiz to negotiate lucrative bouts.

55.    Due to GBP's interference, Ortiz has suffered harm and damages, including, but not limited to, millions of dollars of losses in fight purses and opportunities for other earnings, such as individual sponsorships and endorsements, that come with in-ring activity and success.

56.    GBP was a substantial factor in causing Ortiz' harm.

57.    GBP by engaging in the aforementioned acts and omissions, and/or by authorizing and/or ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with willful and conscious disregard for the rights, welfare, and safety of Ortiz, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

///
///
///
///
///
///
///
///
///
///
///

COMPLAINT

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

1

**PRAYER**

2  WHEREFORE, Ortiz prays for relief as follows:

3          1.      For judicial confirmation that the PRA has been terminated;

4          2.      For compensatory damages according to proof, including, but not limited

5  to, millions of dollars of losses in fight purses and opportunities for other earnings

6  such as individual sponsorships and endorsements that come with in-ring activity and

7  success;

8          3.      For punitive damages according to proof;

9          4.      For attorneys' fees according to proof;

10         5.      For costs of suit;

11         6.      For such other and further relief as the Court determines is necessary and

12  proper under the circumstances.

13  Dated: January 15, 2026                    THE MALONEY FIRM APC &
                                               SILVESTRI LLC
14

15

16                              By:  /s/ Gregory M. Smith & Phillip A. Silvestri
                                     Gregory M. Smith
17                                   Phillip A. Silvestri
18                                   Attorneys for Plaintiff, VERGIL ORTIZ, JR.

19

20

21

22

23

24

25

26

27

28

1

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: January 15, 2026                    THE MALONEY FIRM APC &
                                                        SILVESTRI LLC


By: /s/ Gregory M. Smith & Phillip A. Silvestri
                    Gregory M. Smith
                    Phillip A. Silvestri
        Attorneys for Plaintiff, VERGIL ORTIZ, JR.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

# EXHIBIT A

## PROMOTIONAL RIGHTS AGREEMENT

The following sets forth the material terms of the agreement ("Agreement"), dated as of May 29, 2024, between Golden Boy Promotions, LLC ("Promoter"), Vergil Ortiz, Jr. ("Boxer") and Rick Mirigian ("Manager") regarding the granting of Boxer's exclusive promotional rights to Promoter. Promoter and Boxer are each a "Party" to the agreement and together are the "Parties."

1. Term / Bouts:    Commencing upon Boxer's next bout, which is currently contemplated for August 10 or 17, 2024 against Serhii Bohachuk ("Bohachuk"), and continuing until the completion of three (3) years (as defined below), subject to any applicable early termination or extensions (as referenced in paragraph 8 below) and excluding any period of time that Boxer is unable to compete due to injury or other cause as set forth herein (the "Term").

2. Rights:    Boxer hereby grants to Promoter the sole and exclusive right to promote all combative sport and/or exhibition matches in which Boxer participates during the Term (the "Bouts" and each, a "Bout"). Boxer agrees that during the Term: (a) Boxer shall not engage in any boxing or combat sports or exhibition matches other than as set forth herein; and (b) neither Boxer nor anyone acting on Boxer's behalf shall negotiate for nor contract for Boxer to engage in any combative sports or exhibition match other than as set forth herein.

3. Bouts /
   Minimum Purses:    (a) The Promoter shall use its reasonably good faith efforts to arrange Bouts for Boxer in accordance with the terms set forth herein. As used herein, "Year" is defined as each successive, consecutive 12-month period commencing upon Boxer's next bout as set forth in Paragraph 1, above. As used herein "Major World Title" shall mean the highest level of world championship of the IBF, Ring Magazine, WBA, WBC and/or WBO (excluding interim titles unless otherwise stated). Boxer's purse for each Bout will be negotiated reasonably and in good faith in accordance with boxing industry custom and practice for boxers of Boxer's stature, taking into account then-current market conditions, the opponent, the event budget and other similar factors, but in no event shall Boxer's purse for any Bout be less than the applicable minimums (if any) set forth below.

   (b) The Promoter will pay Boxer a $500,000 signing bonus, payable as follows: (i) $300,000 within three days of the Boxer signing this Agreement; (ii) $100,000 within three days of the Boxer's first fight under the Agreement; and (iii) $100,000 within three days of the public announcement of Boxer's second fight under this agreement, or by October 31, 2024, whichever is sooner.



(c) For the Bohachuk bout, Boxer shall receive a purse of One Million Five Hundred Thousand Dollars ($1,500,000). The Bohachuk bout shall be a twelve (12) round bout at a maximum weight of 154 pounds for the WBC Interim Super Welterweight title.

(d) Should Boxer lose the Bohachuk bout, Boxer's minimum purse during the Term shall be One Million Dollars ($1,000,000); but if Boxer wins his first bout under this Agreement, his minimum purse shall be Two Million dollars ($2,000,000), regardless of his opponent.

(e) If Boxer holds a Major World Title, his minimum purse will be Two Million Five Hundred Thousand Dollars ($2,500,000), regardless of his opponent.

(f) If Boxer participates in the main event of a pay-per-view card as the A-Side and defending his Major World Title, Boxer will receive a minimum guarantee of Two Million Five Hundred Thousand Dollars ($2,500,000) against no less than 75% of Net Event Revenues received by Promoter. Net Event Revenues shall mean all gross revenue received by Promoter for the Event, less, all costs incurred in connection with the promotion of the event (including, but not limited to, undercard expenses, opponent's purse, travel, lodging, advertising and promotional expenses, press tours, taxes, promoter sanctioning fees and the like; but not including any portion of Promoter's non-Event-related fixed overhead expenses.). Boxer shall always be entitled to negotiate the guaranteed payment for any pay-per-view or non-pay-per-view event in good faith.

(g) Boxer's purses will be paid, in full, on the night of his fight, or at Boxer's election, by wire within two business days thereafter. Promoter shall provide Boxer with an initial accounting of Net Bout Revenue for any pay-per-view bout and pay any amounts due within 45 days of the fight. Thereafter, Promoter shall provide Boxer further accounting statements and payments no less than quarterly beginning 60 days after the fight. Boxer shall have the right, once per calendar year, to perform an audit, via third party and at Boxer's own costs, relative to Net Event Revenue payments due to Boxer under this Agreement. Boxer shall provide Promoter five (5) business days' notice of his intent to conduct any such audit, and any such audit shall be completed within ninety (90) days of commencement. Boxer's audit rights shall survive this Agreement.

(h) The Promoter will save a 4 or 6 round spot on their undercards for any of Boxer's bouts for a prospect of Boxer's choosing.

(i) The Promoter guarantees the Boxer two bouts per Year; Promoter will offer at least three (3) opponents per bout, at least sixty (60) days before the proposed fight date.



(j)  Any credential holder or guest submitted by the Boxer, or his team, may only be rejected for good cause as determined by Eric Gomez, with Mr. Gomez's decision and the reason therefor, set forth in writing.

(k)  The Promoter agrees to work in good faith with all boxing promoters to assure that Boxer maximizes his exposure and revenue opportunities during the Term. Promoter agrees to work in good faith to try and negotiate with the representatives for any and all opponents Boxer wants to fight during the Term and Boxer and his representatives expressly agree to direct any and all inquiries they may receive from potential opponents to Promoter for purposes of negotiating the terms of a potential bout with Boxer. In the event Promoter receives an offer to provide Boxer a fight from another promoter or broadcast platform under a provision of services ("POS") or similar agreement, Promoter must disclose to Boxer the full value of all compensation offered and will provide Boxer with a copy of such POS or similar agreement and have Boxer included as a party to such agreement. In the event that a third party promoter, broadcaster, or financier wants to negotiate a fight involving Boxer; Promoter, Boxer, and his representatives, will work in good faith to maximize the opportunity for all parties, including but not limited to, as necessary, by Promoter allowing Boxer's representatives to directly negotiate the bout with the third party. Unless the parties agree otherwise, Promoter shall receive a POS fee equal to twenty-five percent (25%) of Boxer's compensation for the bout. Any such bout shall count as one of Promoter's annual guaranteed bouts required by Section 3(i).

4.  <u>Bout Arrangements:</u>  (a)  Boxer's opponent for each Bout will be mutually determined by Promoter and Boxer in consultation with DAZN or other exclusive broadcast partner of Promoter. Boxer recognizes and agrees that DAZN or other exclusive broadcast partner of Promoter shall have final discretion over the selection of any opponent.

(b)  For each Bout Promoted by Promoter hereunder, Promoter shall provide Boxer with the following (for use by Boxer and Boxer's team): (i) six (6) round-trip airfares, with two being in business class; and (ii) six (6) standard hotel rooms and per diems or meal coupons for six (6) persons for such period of time prior to the Bout as determined by Promoter. For each bout Promoted by Promoter hereunder where Boxer's bout is the main event, Promoter shall provide Boxer with a minimum of thirty (30) complimentary tickets of admission to each Bout promoted by Promoter hereunder. Twenty (20) of the complimentary tickets will be at ringside and ten (10) tickets will be at the next price level.

(c)  For each Bout promoted by Promoter hereunder, Boxer shall execute and comply with the terms of Promoter's customary Bout agreement and/or the



Bout contract required by the applicable athletic or boxing commission ("Commission") and shall cooperate as required by Promoter to comply with any applicable law or regulation. Boxer agrees to comply with all rules and regulations of the applicable sanctioning body or bodies and all applicable governmental, legal, or regulatory authorities including, but not limited to, attaining the proper weight at the appropriate time for each Bout. Boxer agrees to perform such additional acts, make such appearances before the Commission, and to execute and deliver any additional documents as Promoter may deem necessary to effectuate this Agreement.

(d) For each Bout promoted hereunder, Boxer shall cooperate fully to ensure that all medical examinations and other testing of Boxer are undertaken prior to the Bouts and likewise address all related matters in preparation for the Event to ensure full compliance with the applicable Commission regulations. Boxer will submit to medical examinations as may be required by Promoter's (or its designee's) insurance carrier or the Commission. In addition to any other document that Boxer is required to execute in accordance herewith, Boxer specifically agrees to completely, accurately, and truthfully execute the medical examination questionnaire (or similar document) required by Promoter's insurance carrier within one (1) day of Promoter's request for Boxer to execute such questionnaire.

(e) Boxer agrees to submit to anti-doping testing (in accordance with the standards of the Commission). In addition to such Commission required testing, Boxer shall submit to and fully comply with any and all additional drug testing protocols and procedures instituted by Promoter in connection with the Bouts hereunder, including Olympic-style drug testing including, but not limited to, multiple, random urine and blood tests at any time prior to any Bout hereunder, and urine and blood tests immediately following any Bout hereunder for all substances and processes banned by the entity designated by Promoter to conduct the testing, the Commission and/or sanctioning body if applicable ("Banned Substances"). All such testing shall be conducted by an accredited entity designated by Promoter in its sole discretion, and Promoter shall ensure that it is a condition of Boxer's opponents' bout agreements that the opponents shall submit to and comply with such additional drug testing protocols and procedures and that identical drug testing protocols and procedures shall apply to the opponents. Boxer hereby authorizes Promoter and whichever testing agency designated by Promoter to conduct anti-doping testing, to report all results of such testing to Promoter and Boxer's opponents' representatives immediately after the agency receives the results of such tests. If Boxer tests positive for any Banned Substance (following the testing of an A sample and a B sample of the specimen in question), Boxer further authorizes the agency designated by Promoter to deliver the anti-doping testing report to the Commission and Fight Fax, Inc. Boxer agrees to execute any documents that are necessary to grant such authorizations.



(f) The Parties shall co-operate and act in good faith regarding any Purse Bid(s) which involve the Boxer during the Term and will mutually agree on the terms of any such participation, including but not limited to: (i) discussing and strategizing the terms of the Purse Bid; and (ii) seeking to agree terms for the contest to be resolved outside the Purse Bid on terms acceptable to the Parties. Promoter will, during the Term of this Agreement, use reasonable efforts to win any Purse Bid(s) which involve the Boxer. If Promoter wins a Purse Bid in which Boxer is the A-Side and the winning bid would not result in Boxer being paid his minimums set forth herein, Promoter will pay the Boxer the minimum purse for that Bout due under the terms of this Agreement. If Promoter fails to win a purse bid and Boxer's share of the winning bid exceeds his minimum, Promoter shall be entitled to twenty percent (20%) of Boxer's compensation in excess of his minimum. If Promoter fails to win a purse bid and Boxer's share of the winning bid is less than his minimum, Promoter shall be entitled to a share of Boxer's compensation for that Bot as follows:

| Amount to Boxer (Net Sanctioning Fee) | Percent to Promoter |
|---|---|
| Less than $1.5 million | 7% |
| More than $1.5 million, but less than $2 million | 10% |
| More than $2 million, but less than $2.5 million | 15% |

If Boxer accepts the fight, any purse bid bout shall count as one of the Promoter's annual guaranteed bouts required by Section 3(i); however, if Boxer declines to take a bout after a purse bid, that bid shall not court as one of Promoter's annual guaranteed bouts.

(g) Promoter shall be the exclusive owner of all rights in and to the Bouts, in all media throughout the world in perpetuity, and Boxer's grant of rights hereunder includes, without limitation, all rights required to arrange, stage and sell tickets of admission to the Bouts; all exclusive worldwide rights to broadcast, telecast, internet stream, record, film and transmit electronically and digitally such Bouts for exhibition in all media; all Bout merchandising and other ancillary and subsidiary rights therein; and the unrestricted worldwide right to use, reproduce and display Boxer's name, voice, likeness and/or biography in connection with the advertising, promotion and exploitation of all such Bouts and any related activities (and all rights therein and/or footage thereof), Boxer's career and Promoter's business. Notwithstanding the foregoing, Promoter understands and agrees that Boxer shall retain all his imaging rights for commercial purposes, as well as all commercial personal merchandising and NFT rights.

NO

5. Publicity /

_/ EG.

Page 5

<dl>
<dt>Sponsorship:</dt>
<dd>

Boxer agrees to cooperate and assist in publicizing, advertising, and promoting each Bout hereunder and to appear at and participate in a reasonable number of press conferences, interviews and other publicity appearances and activities at times and places designated by Promoter. Except for the names of athletic equipment manufacturers appearing on Boxer's equipment in a reasonable size, location and placement, Boxer agrees to notify Promoter of all advertising or promotional material that will appear on Boxer's body or on any item of clothing worn by Boxer, his trainers, seconds, or assistants during and/or at any Bout or any related event. In any event, no advertising or promotional material appearing on Boxer's body or on any item of clothing worn by Boxer, his trainers, seconds or assistants during and/or at any Bout or any related event shall conflict with any sponsor of the Event or the site; shall display the name, logo or identification of any hotel, casino or gaming, wagering, betting or line service, or any other entity involved with gaming, wagering or betting lines; display the name, logo or identification of any soft drink or other beverage manufacturer or distributor; be in the form of a body or other temporary tattoo or artwork; or be lewd, obscene or otherwise inappropriate (as determined by Promoter and/or the applicable television network in its absolute discretion) for display to the intended live and/or television audience(s).
</dd>
</dl>

6. **Cancellation / Postponement:**

In the event that: (a) Boxer fails or is unable to perform any obligation hereunder due to any illness, injury or disability or due to an order of an athletic commission or other legal or regulatory entity as a result of a violation or offense committed by Boxer (excluding any automatic suspensions for non-violations or non-breaches) which are a result of Boxer's breach or non-performance hereunder or failure to approve opponents or agree on applicable purses; or (b) any Bout scheduled under this Agreement is postponed, or Promoter's performance hereunder is prevented or materially impeded, as a result of any reason provided in the immediately preceding clause (a) or in the applicable Bout Agreement, or due to an event of force majeure, disaster, labor action, power outage or other reason beyond Promoter's reasonable control, then the Term shall be automatically extended for the period of the applicable event causing the postponement or other delay.

7. **Extension/ Early Termination :**

In the event that during the Term: (a) Boxer becomes a party to any agreement with a media network or outlet, such as DAZN, for the purpose of broadcasting Boxer's Bouts. For the sake of clarity, this provision excludes any acting role on any network television series and/or film; or (b) any such agreement with a media network or outlet to which Boxer is a party for the purpose of broadcasting Boxer's Bouts is extended, then the Term of this Agreement shall be extended so that it is coterminous with the complete period of the term of any such agreement. Additionally, if Boxer wins a Major World Title during the Term, then this Agreement shall automatically extend for an additional one (1) year.



Notwithstanding anything to the contrary contained herein, in no event shall the term of this Agreement extend beyond the maximum term permitted by any applicable law or regulation. In the event that Boxer loses more than one (1) boxing match during the Term, then Promoter shall (a) have the right to renegotiate the guaranteed minimum purses and minimum guarantees set forth herein, which shall be mutually agreed pursuant to good faith negotiations in accordance with boxing industry custom and practices; and (b) have the right to terminate this Agreement by written notice within thirty (30) days of the date of the fight in which Boxer lost. Promoter shall have the right to terminate this Agreement if: (a) Boxer fails (for any reason other than illness or injury) to engage in any Bout hereunder, after previously agreeing to it; (b) Boxer is arrested for, or convicted of, a felony or adjudicated to have violated any applicable law or governmental, regulatory or sanctioning body rule or regulation, or which subjects Boxer or Promoter to public ridicule, scorn, contempt or embarrassment, including but not limited to the use of Performance Enhancing Drugs (i.e.: steroids); (c) Boxer is in breach of any of his obligations to Promoter (e.g., Boxer violates Promoter's exclusive promotional rights by negotiating with or entering into an agreement with another Promoter, by refusing to participate in a bout after signing a bout contract (other than due to injury or other valid reason)), or fail to make the contracted weight; or (d) any prior promotional agreement between Boxer and any third party is determined to be binding upon Boxer or any claim or proceeding alleging same is filed or commenced. Promoter's right to terminate must be exercised by written notice within thirty (30) days following Promoter obtaining knowledge of the triggering event, or will be deemed waived. At Promoter's election, this Agreement may be suspended during any period of retirement by Boxer from the sport of boxing, but this Agreement shall be automatically operative and in full force and effect should Boxer resume his professional boxing career.

8. First Negotiation
and Last Refusal:   Upon expiration or termination of the Term, the parties will negotiate exclusively in good faith for a period of thirty (30) days regarding a new promotional agreement between Boxer and Promoter. In the event Promoter and Boxer fail to reach agreement within such thirty (30) day period, Promoter shall be entitled to a right of last refusal regarding any offer received by Boxer within six (6) months after the expiration of the Term (i.e., Boxer shall not be entitled to enter into a new bout and/or promotional agreement with any third party without first giving Promoter a five-business day right to enter into an agreement with Boxer upon the same material terms as contained in the third party offer (a written copy of which shall be provided to Promoter by Boxer), provided that Promoter shall not be required to match any terms which cannot be met as easily by one party as by another, such as the engagement of a particular person or a bout against a particular opponent or for a particular title or titles. The Parties agree that any "match" of an offer hereunder must contain the same financial terms as the third party offer and cannot be against an opponent ranked higher than the opponent

Page 7

offered by the third party. Boxer agrees that any bout and/or promotional agreement which Boxer purports to enter without fully complying with the terms of this paragraph shall be automatically null and void and, in such event, Boxer agrees that without prejudice to any of Promoter's other legal rights and remedies against Boxer, Promoter shall be entitled to injunctive or other equitable relief to prevent or remedy Boxer's breach or non-compliance hereunder.

9.  Taxes:                 Boxer shall be solely responsible for payment of all taxes relating to amounts payable to Boxer hereunder. Promoter shall deduct from any payment made to Boxer hereunder all amounts required by federal, state and/or local taxing authorities to be withheld by Promoter. If any tax or other payment is imposed upon or charged to Promoter in connection with the amounts payable to Boxer hereunder, then Promoter shall be entitled to deduct such amount from the purse or any other monies payable to Boxer, or at Promoter's election and upon Promoter's request, Boxer shall immediately reimburse Promoter for any such tax or payment.

10. Representations:       (a) Boxer represents and warrants that Boxer is not subject to any other Promotional Agreement. Boxer represents and warrants that he has obtained or will obtain prior to engaging in the first Bout hereunder, at his sole cost and expense, all clearances from any person or entity who may claim to have rights which would conflict or interfere with Promoter's rights hereunder.

                           (b) Boxer represents and warrants that he is a United States person or that he has obtained, or will obtain, prior to engaging in the first Bout hereunder, at Promoter's cost and expense, the visa(s) and/or permit(s), if any, necessary for him to fight in the United States. The Promoter further agrees to assist, at Boxer's expense, Boxer's designated personnel in obtaining visa(s) for each Bout.

                           (c) Boxer has and will fully, completely, accurately, and truthfully complete and execute the medical examination questionnaires (or similar documents) required by Promoter's insurance carrier within three (3) days of Promoter's request for Boxer to complete and execute such questionnaires as required. Boxer represents that he does not have any mental or physical condition, sickness, disease, or injury and is not taking any medication which may impair his ability to prepare for and/or give an honest exhibition of his skill in any Bout hereunder. Boxer agrees that he shall keep himself in "fighting shape" and that he will not allow his physical condition to deteriorate or his weight to fluctuate such that he would not be physically able to participate in any Bout offered to him hereunder, and that to the extent Boxer agrees to participate in a Bout at or below a particular weight that Boxer will make weight at the weigh-in for each Bout. Boxer further represents and warrants that he has not and will not during the term hereof (i) use any illegal substances or performance enhancing drugs (e.g., steroids); and (ii) has not





Page 8

attended a rehabilitation center or similar establishment for treatment for drug and/or alcohol dependency or drug and/or alcohol abuse at any time within the last eighteen (18) months.

(d) Boxer agrees to promptly submit to such reasonable medical examinations and provide such information (including full disclosure of all past or present injuries, medical conditions, or surgical procedures) as Promoter may request to establish Boxer's physical ability to participate in Bouts hereunder. All of Promoter's obligations hereunder are conditioned upon Promoter's review and approval, in its sole discretion, of the results of Boxer's medical exams and disclosures.

(e) Boxer understands that Promoter may be required to report Boxer's purses to the Commission and/or Sanctioning Organization(s). If required to do so, the Promoter shall report a mutually agreed upon amount as Boxer's purses for the Bouts.

(f) If there is a breach of this Agreement by or caused by either Party, then the breaching Party, agrees to indemnify, defend and hold harmless the non-breaching Party and its officers, directors, employees, agents, representatives, affiliates, assigns and licensees from and against any and all claims, liabilities, judgments, expenses or damages (including reasonable attorneys' fees) resulting therefrom.

(g) Promoter's distribution relationship with DAZN is a material incentive for Boxer to enter into this Agreement. In the event that Promoter's distribution relationship with DAZN terminates, for any reason, and Promoter does not have an agreement in principle in place for an exclusive distribution relationship with an alternative broadcaster, then Boxer shall have the right to terminate this Agreement. For avoidance of doubt, if Promoter has agreed on all material terms with an alternative broadcaster, but is in the process of negotiating the long form agreement with that broadcaster, Boxer shall not be entitled to terminate this agreement. Boxer's right to terminate must be exercised by written notice within thirty (30) days following Boxer obtaining knowledge of the triggering event, or will be deemed waived.

(h) Boxer agrees that if the Event or Bout promoted hereunder is cancelled or postponed because of Boxer's use, injection, ingestion, application and/or implantation of a Banned Substance (including, but not limited to because of a positive test for a Banned Substance), Boxer agrees to reimburse Promoter for any and all costs and expenses incurred by Promoter as a result of such cancellation or postponement. Those costs and expenses include, but are not limited to, the costs of production, marketing, public relations, media events, and the travel costs of all parties involved in the event. Boxer shall remit payment to the Promoter for such costs within three (3) days of Promoter's request for same. If Boxer does not remit payment to Promoter within three

(3) days of Promoter's request, then Boxer hereby authorizes Promoter to deduct such fees, costs, and expenses from Boxer's purse for future bouts, whether promoted by Promoter or not.

(h)  Boxer agrees that in the event that any Bout promoted hereunder is cancelled or postponed because Boxer violates a rule of an applicable Commission or sanctioning organization, or is arrested and convicted of any criminal act or because of some act or omission by Boxer (other than for a physical injury suffered after the execution of this agreement), including Boxer's failure to make the contracted weight for any Bout, Boxer agrees to reimburse Promoter for any and all prorated costs and expenses incurred by Promoter as a result of such cancellation or postponement if caused by Boxer.

11. <u>Boxer Representatives</u>:  Boxer understands and agrees that his/her and his/her manager(s), advisor(s), consultant(s) or representatives' cooperation, professionalism, reputation, compliance, representations and relationship with Promoter, and all related persons and entities, including, but not limited to, state Athletic Commissions, is essential to the successful promotion of Boxer's career.  Therefore, Boxer agrees to disclose all managers, advisors, consultants and/or representatives to Promoter as of the date of signing of the Agreement.  Further, Boxer agrees to provide Promoter with reasonable notice (and prior to any subsequent Bout) of any new person or entity that will act as Boxer's manager, advisor, consultant, or any other type of representative not previously disclosed to Promoter.  Boxer understands and agrees that this paragraph is a material provision of the Agreement, and that Promoter has materially relied upon Boxer's representations and disclosure of his present managers, advisors, consultants, and representatives in agreeing to offer Boxer this Agreement.

12. <u>Governing Law</u>:  (a) Other than issues related to each Bout, which will be controlled by the rules of the applicable Commission, this Agreement will be governed and construed in accordance with the laws of the State of Nevada applicable to agreements entered into and wholly performed therein.  Any dispute, controversy or claim arising out of or relating to this Agreement, including the formation, interpretation, breach, or termination thereof, including whether the claims asserted are arbitrable, will be referred to and finally determined by arbitration in accordance with the JAMS Commercial Arbitration Rules before a single arbitrator who shall be selected by the parties to the arbitration and who shall be a retired judge or justice. If the parties are unable to select an arbitrator, the arbitrator will be selected in accordance with the JAMS Rules.  The place of arbitration will be Las Vegas, Nevada. Judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.  The prevailing Party in arbitration shall be entitled to its reasonable costs, including the costs of arbitration, and attorneys' fees.



Page 10

(b) Promoter and Boxer acknowledge and agree that Boxer's services in connection with the Bouts are of a special, unique, unusual, and extraordinary character giving them peculiar value, the loss of which cannot be reasonably or adequately compensated by damages in an action at law and could cause Promoter irreparable damage and injury. Accordingly, if Boxer is in breach of this Agreement, Promoter agrees to put Boxer on notice of the breach and provide Boxer with 30 days to cure the breach. In the event of any breach or claimed breach hereof by Promoter, Boxer shall provide Promoter with notice of such claimed breach and an opportunity to cure the claimed breach Boxer shall provide such notice as soon as Boxer is aware of the claim. Promoter shall have thirty (30) days from notice to cure the claimed breach, unless the breach relates to an event scheduled for a date certain that is less than thirty (30) days from the date of notice, in which event Promoter shall have a reasonable time to cure, which, in any event, shall be not less than ten (10) business days. Provided the Promoter has commenced a cure of the claimed breach within the applicable period set forth above, Promoter shall be allowed a reasonable time to complete the cure. Boxer's remedy in the event of an uncured breach by Promoter shall be limited to Boxer's actual, provable monetary damages proximately caused by Promoter's breach and in no event (i) shall Promoter be liable to Boxer for special or consequential damages, lost profits or punitive or exemplary damages; or (ii) shall Boxer be entitled to (nor shall Boxer seek or authorize any other person or entity to seek) injunctive or other equitable relief (other than declaratory relief) or to otherwise terminate or rescind this Agreement. Any action by Boxer hereunder shall be commenced, if at all, within one year of the claimed breach and Boxer hereby waives any otherwise applicable statutes of limitations that would provide any greater amount of time within which to bring an action. Neither Promoter nor Boxer shall bring any action hereunder without first engaging in a good faith attempt to resolve the issues that are proposed to be the subject of the action and the parties hereby agree to cooperate with each other in such efforts to achieve a good faith resolution of the dispute.

(c) Nothing contained in this Agreement shall be construed so as to require the violation of any law or regulation, and wherever there is any conflict between any provision of this Agreement and any law or regulation, the applicable law or regulation shall prevail; provided, however, that in such event the provision so affected shall be curtailed only to the extent necessary to permit compliance with the minimum legal requirement, and no other provisions of this Agreement shall be affected thereby. Promoter shall have the right to assign, license or transfer any or all of the rights granted to or retained by it under this Agreement to, or to otherwise perform its services and obligations hereunder in conjunction with, any person, firm, or corporation, including, without limitation, any promoter or co-promoter. Neither the benefits nor the duties of Boxer under this Agreement may be assigned or transferred for any reason.



Page 11

13. Confidentiality:    Promoter, Boxer and Boxer's representatives and affiliates shall maintain strict confidentiality regarding Promoter and all of Promoter's contracts, agreements, business arrangements, plans, legal and business affairs, and professional relationships. Without limiting the generality of the foregoing, Promoter and Boxer shall maintain strict confidentiality regarding the terms of this Agreement, and Promoter and Boxer agree that neither Promoter, Boxer nor Boxer's representatives and/or affiliates shall use, disseminate, publish or disclose, or authorize or permit any third party to use, disseminate, publish or disclose, any information regarding the terms of this Agreement or any other agreement between Boxer and Promoter. Notwithstanding the foregoing, Boxer understands and agrees Promoter can announce the signing of Boxer and may be required to disclose certain information to the athletic commission.

14. Non-Disparagement:    Promoter and Boxer agree not to make, or induce or assist others in making, any negative, disparaging, detrimental, or derogatory remarks or statements (written, oral, telephonic, electronic, on social media, or by any other method) about each other, their business operations, business practices, reputation, executives, or employees. Therefore, if Boxer breaches this paragraph, Promoter shall have the right to terminate this Agreement. In addition, the Parties agree that it would be impracticable or extremely difficult to fix the actual damages which would be suffered if Boxer, or his representatives breach this provision. Therefore, the Parties agree that if Boxer or his affiliates breach this provision, Promoter shall be entitled to liquidated damages in the amount of one hundred thousand dollars ($100,000) from the breaching party.

15. Formal Agreement:    Promoter and Boxer may enter into a more formal agreement incorporating the terms hereof, but until such more formal agreement is executed, this Agreement shall constitute the entire understanding of the parties hereto and shall constitute a legal and binding agreement between the parties. Boxer agrees that in no event shall Boxer be entitled to (nor shall Boxer seek or authorize any other person or entity to seek) injunctive or other equitable relief or to otherwise terminate or rescind this Agreement. No waiver by Promoter of any breach or non-performance by Boxer hereunder shall be deemed to be a waiver of any preceding or succeeding breach or non-performance. No modification or amendment of this Agreement shall be valid unless made by a writing signed by the party to be charged. All parties have participated in the negotiation of this Agreement and, thus, it is understood and agreed that the general rule that ambiguities are to be construed against the drafter shall not apply to this Agreement. In the event that any language of this Agreement is found to be ambiguous, such ambiguity shall not be resolved by construing this Agreement in favor of or against any party, but rather construing the terms of this Agreement as a whole, according to their fair meaning, and each party shall have an opportunity to present evidence as to the actual intent of the parties with respect to any such ambiguous language.




**BOXER ACKNOWLEDGES THAT PROMOTER HAS RECOMMENDED THAT BOXER OBTAIN THE ADVICE OF HIS OWN, INDEPENDENT COUNSEL BEFORE ENTERING INTO THIS AGREEMENT, AND THAT HE HAS HAD THE OPPORTUNITY TO DO SO.**

**BOXER FURTHER UNDERSTANDS AND ACKNOWLEDGES THAT HE IS UNDER NO OBLIGATION TO ACCEPT ANY OF THE TERMS OF THIS AGREEMENT, THAT THE TERMS HAVE BEEN NEGOTIATED BETWEEN PROMOTER AND BOXER AND ARE THE RESULT OF SUCH NEGOTIATION AND THAT BOXER HAS READ ALL PARTS OF THIS AGREEMENT AND UNDERSTANDS THE TERMS HEREOF AND ENTERS INTO THIS AGREEMENT FREELY AND NOT AS THE RESULT OF ANY COERCION OR DURESS.**

**BOXER HEREBY ACKNOWLEDGES THAT HE HAS RECEIVED, READ AND UNDERSTOOD THE CONTENTS OF THIS DOCUMENT AND/OR THIS DOCUMENT HAS BEEN TRANSLATED TO HIM.**

By its signature below, each party confirms its understanding of an agreement to the foregoing.

**PROMOTER:**                                    **BOXER:**

GOLDEN BOY PROMOTIONS, LLC                        VERGIL ORTIZ

By: _____                         By: _____

Date: _____7-8-24._____                         Date: 7/3/24

**MANAGER:**

RICK MIRIGIAN

By: _____

Date: ___7 / 3 / 24___

___/___                          Page 13

# EXHIBIT B



Gregory M. Smith
direct dial: 310.347.4698
gsmith@maloneyfirm.com

January 8, 2026

**<u>VIA E-MAIL ONLY</u>**
**RCestero@ggfirm.com**

Ricardo P. Cestero
GREENBERG GLUSKER
1900 Avenue of the Stars, 21st Floor
Los Angeles, CA 90067

> **Re:** **_Promotional Rights Agreement between Vergil Ortiz, Jr. and Golden Boy Promotions, LLC_**

Mr. Cestero,

As you are well aware, in May 2024, our respective clients – Vergil Ortiz, Jr. ("VO") and Golden Boy Promotions, LLC ("GBP" or "Promoter") – executed a Promotional Rights Agreement ("PRA") under which GBP obtained the right to promote VO's bouts between August 2024 and August 2027.

Amongst the various obligations undertaken by GBP in the PRA, were the obligation to provide VO "two bouts per Year, with at least 3 different opponents offered per but at least sixty (60) days before the proposed fight date."  (PRA 3(i).)

VO last fought in November and is looking to get back in the ring in spring 2026. However, to date, GBP has only been offered a bout with a single opponent (Boots Ennis).  VO's manager, Rick Mirigian, was told by GBP in a December 2025 meeting that GBP would not offer any other opponents and that its broadcaster would not approve VO to fight anybody other than Boots. Thereafter, Dan Rafael reported that DAZN executive (presumably without knowledge of the terms of the PRA) told him that the network would not allow an offer of any VO opponent besides Boots.  As for the terms of the offer, it falls far short of the marketplace for fights of similar significance between elite young fighters on the cusp of pound for pound superstardom.

On the topic of DAZN, the PSA further states, "Promoter's distribution relationship with DAZN is a material incentive for Boxer to enter into this Agreement. In the event that Promoter's distribution relationship with DAZN terminates, for any reason, and Promoter does not have an agreement in principle in place for an exclusive distribution relationship with an alternative broadcaster, then Boxer shall have the right to terminate this Agreement. For avoidance of doubt, if Promoter has agreed on all material terms with an alternative broadcaster, but is in the process of negotiating the long form agreement with that broadcaster, Boxer shall not be entitled to terminate this

2381 Rosecrans Avenue  Suite 405 **I** El Segundo, California  90245  **I** 310.540.1505

Ricardo P. Cestero
GREENBERG GLUSKER
*Re: Promotional Rights Agreement between Vergil Ortiz, Jr. and GBP*
January 8, 2026
Page:  2

agreement. Boxer's right to terminate must be exercised by written notice within thirty (30) days following Boxer obtaining knowledge of the triggering event, or will be deemed waived."  (PRA 10(g).)

VO understands that GBP's agreement with DAZN has been terminated or otherwise expired as of the end of 2025. If VO is mistaken as to the completion or duration of GBP's distribution agreement with DAZN, GBP should – as soon as possible – provide documents demonstrating on ongoing contractual relationship.

Otherwise, please consider this to be VO's notice of termination per section 10(g) of the Promotional Rights Agreement.

This letter is not intended to be a compete recitation of VO's rights, GBP's breaches of the PRA, VO's damages therefrom, or VO's potential remedies.  All rights are reserved, and none are waived.


Sincerely,

THE MALONEY FIRM, APC


Gregory M. Smith

GMS
00227040.DOCX

# EXHIBIT C



Ricardo P. Cestero

D: 310.785.6809
F: 310.553.0687
RCestero@ggfirm.com
File Number: 17896-00601

January 13, 2026

**Via E-Mail**

Gregory M. Smith
The Maloney Firm APC
2381 Rosecrans Avenue
Suite 405
El Segundo, California 90245
gsmith@maloneyfirm.com

      Re:    **Promotional Agreement Between Golden Boy Promotions, LLC and Vergil Ortiz, Jr.**

Dear Greg:

      I write in response to your letter of January 8, 2026. Your letter makes a variety of inaccurate assertions and purports to terminate the Promotional Rights Agreement ("Agreement") dated as of May 29, 2024 between Golden Boy Promotions and Vergil Ortiz, Jr. Contrary to the assertions in your letter, Mr. Ortiz is not permitted to terminate the Agreement and, in fact, is in breach of his obligations under the Agreement.

      You cite Section 10(g) of the Agreement as the purported grounds for termination. However, your assertions regarding Golden Boy's broadcast arrangements are materially inaccurate. Specifically, although Golden Boy's 2025 Licence Agreement with DAZN expired on December 31, 2025, in late October, Golden Boy and DAZN agreed on the material terms of a new Licence Agreement to cover calendar years 2026 and 2027 and have since exchanged several drafts of the long form agreement documenting those material terms. The most recent draft has been with DAZN since before the holidays. Since then, Jared Kass, Golden Boy's main contact at DAZN has been on paternity leave. Given these facts, the Agreement makes absolutely clear that "Boxer shall not be entitled to terminate this agreement." Your attempt to terminate the Agreement is therefore invalid and ineffective and Mr. Ortiz remains bound by the terms of the Agreement.

      You make additional assertions regarding Golden Boy's alleged failure to perform its obligations to offer Mr. Ortiz bouts under the Agreement. These assertions are similarly wholly unsupported by the terms of the Agreement. As your letter acknowledges, Mr. Ortiz fought in November. Golden Boy is obligated to offer him two fights per contract year, which runs from August 10 of each year to August 10 the following year. Accordingly, Golden Boy has eight months remaining in which to provide Mr. Ortiz his second fight during this contract year.

Gregory M. Smith
January 13, 2025
Page 2

Moreover, your comments about the negotiations for a potential fight against Jaron Ennis are wildly inaccurate. Golden Boy has offered Mr. Ortiz a guarantee of $3 million for that fight—$1 million more than the guarantee required by the Agreement—along with potential pay-per-view upside. In response, Mr. Ortiz has demanded a $7 million guarantee, which is more than three times what is required under the Agreement and twice as much as Mr. Ortiz has ever earned in his career. That demand is completely unreasonable given that neither Mr. Ortiz nor Mr. Ennis has ever proven the ability to carry a pay-per-view event. Manifestly, Mr. Ortiz is acting in bad faith and making wholly unreasonable demands.

Moreover, Golden Boy is informed that Mr. Ortiz's representatives, including you, have engaged in discussions and negotiations directly with third parties regarding potential fights for Mr. Ortiz, including the Ennis fight. As you well know, Section 2(b) of the Agreement expressly prohibits Mr. Ortiz or his representatives from negotiating for his boxing events. Further, Section 3(k) explicitly states that "Boxer and his representatives expressly agree to direct any and all inquiries they may receive from potential opponents to Promoter for purposes of negotiating the terms of a potential bout with Boxer." Mr. Ortiz's direct discussions with third parties are a clear breach of these provisions.

To make matters worse, Golden Boy is informed that Mr. Ortiz's representatives have improperly disclosed material terms of the Agreement to third parties during those negotiations. The disclosure of these terms to third parties, coupled with Mr. Ortiz's manifestly unreasonable demands made to Golden Boy, and his direct communications with third parties, have all made Golden Boy's negotiations over the DAZN long form more difficult and have directly resulted in delays to completing that agreement. As such, contrary to your assertions, Mr. Ortiz is currently in breach of the Agreement and its covenant of good faith a fair dealing.

We hereby instruct you, Mr. Ortiz, and his other representatives to immediately cease and desist from communicating with any third parties regarding potential fights for Mr. Ortiz or the terms of the Agreement. Should you refuse, Golden Boy is prepared to seek all available relief, including through an action for declaratory and injunctive relief to prohibit ongoing violations of Golden Boy's rights.

This letter is not meant as a complete statement of Golden Boy's rights or remedies, all of which are expressly reserved.

Sincerely,

Ricardo P. Cestero

RPC

GreenbergGlusker.com