**THE MALONEY FIRM, APC**

Gregory M. Smith, Esq., **CA Bar No. 259971**

2381 Rosecrans Avenue, Suite 405

El Segundo, California 90245

T: (310) 540-1505 │ F: (310) 540-1507

E: gsmith@maloneyfirm.com

**SILVESTRI LLC**

Phillip A. Silvestri, Esq., **NV Bar No. 11276**

5725 S. Valley View Blvd., Suite 5-902925

Las Vegas, NV 89118

T: (702) 908-3698

E: phillip@silvestri.com

Attorneys for Plaintiff, VERGIL ORTIZ, JR.

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| VERGIL ORTIZ, JR., | Case No.: 2:26-cv-00084-CDS-EJY |
| | Judge: Hon. Cristine D. Silva |
| Plaintiff, | Magistrate Hon. Elayna J. Youchah |
| | Judge: |
| vs. | Department: 6B |
| | Complaint Filed: January 15, 2026 |
| GOLDEN BOY PROMOTIONS, LLC; | Trial Date: Not Set |
| and DOES 1-15, inclusive, | |
| | **OPPOSITION TO DEFENDANT'S** |
| Defendants. | **EMERGENCY MOTION FOR** |
| | **TEMPORARY RESTRAINING** |
| | **ORDER** |
| | |
| | Hearing Date: February 20, 2025 |
| | Time: 10:00 a.m. |

**OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 │ F: (310) 540-1507

In on Order denying a promoter's similar motion for a preliminary inunction to prevent a boxer from competing during a pending contractual arbitration, Judge Gerard E. Lynch (who was later elevated to the Second Circuit Court of Appeals) observed, "A boxer's career is measured in years, not, as for most promoters and lawyers, in decades….the individual who most tangibly faces the prospect of 'irreparable harm' is the boxer who walks into the ring to engage in physical combat. <u>For everyone else, all that is at stake is money.</u>" *Star Boxing, Inc. v. Tarver*, No. 02 CIV. 8446(GEL), 2002 WL 31867729 at *6 (S.D. NY. Dec. 20, 2002) (emphasis added).

As explained further below, this Court should follow Judge Lynch's lead and deny this motion because, amongst a litany of other reasons, Defendant Golden Boy Promotions, LLC ("GBP") cannot show it will suffer any irreparable harm if Plaintiff Vergil Ortiz ("VO") is allowed to engage in professional boxing matches during the pendency of these proceedings.

A declaration provided by DAZN COO Ed McCarthy confirms that GBP was offered to extend GBP's prior long-term distribution contract in 2025, but that GBP declined.  (McCarthy Decl. ¶4). That declaration also states that DAZN is willing to enter into a new long-terms distribution agreement with GBP, whether or not VO is under a promotional agreement with GBP. (McCarthy Decl. ¶9).

Accordingly any harm that might befall GBP is solely monetary, self-inflicted, and illusory in that that its long-term broadcaster remains open to doing business with

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

1

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

## TABLE OF CONTENTS

| | |
|---|---|
| **I. INTRODUCTION** | 6 |
| **II. FACTS** | 7 |
|    **A. Background Information and Terminology of Professional Boxing** | 7 |
|    **B. The PRA and Summary of Events Leading to VO's Lawsuit** | 8 |
|    **C. Actions Since VO's Lawsuit was Filed** | 11 |
| **III. LEGAL STANDARD** | 12 |
| **IV. ARGUMENT** | 13 |
|    **A. GBP Is Unlikely To Succeed On The Merits Of Its Claims** | 13 |
|      **1. Arbitration** | 14 |
|      **2. Breach of Contract** | 16 |
|      **3. Intentional Interference with Contract** | 17 |
|      **4. Interference with Economic Advantage** | 18 |
|    **B. GBP Is Unlikely To Suffer Irreparable Harm In The Absence Of Preliminary Relief** | 18 |
|    **C. The Balance Of The Equities Tips In Favor Of Ortiz, Not GBP** | 20 |
|    **D. An Injunction Is Not In The Public Interest** | 21 |
|    **E. If Any Injunction Issues – And It Should Not – GBP Should Be Required To Post A Bond** | 21 |
| **V. CONCLUSION** | 22 |

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

{00228227}

**OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

# TABLE OF AUTHORITIES

## CASES

*Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020)..................................................18

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)........................13

*Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th Cir. 2023)...........................15

*Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023)...........................15

*Burch v. Second Jud. Dist. Ct.*, 49 P.3d 647, 650 (Nev. 2002).............................................16

*City of Los Angeles v. County of Kern*, 462 F.Supp.2d 1105, 1111 (C.D. Cal. 2006).........12

*Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 686–87 (1996)..............................................16

*Don King Promotions, Inc. v. Mosley*, Case No. 15–61717–CV–WILLIAMS, 2015 WL 11198251
(S.D. FL August 25, 2025)..............................................................................................14

*FBC Mortg., LLC v. Skarg*, 699 F. Supp. 3d 837, 842 (N.D. Cal. 2023)..............................16

*Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)...............................15

*Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021)................12, 13

*Franklin v. Haak*, No. 19-10137, 2020 WL 344848, at *4 (E.D. Mich. Jan. 21, 2020).........7

*Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974)........................13

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 340 (1999)..........14

*Kaldi v. Farmers Ins. Exch.*, 117 Nev. 273, 278, 21 P.3d 16, 19 (2001)..............................17

*Kelly v. Pub. Util. Dist. No. 2*, 552 Fed.Appx. 663, 664 (9th Cir. 2014)............................16

*Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012)........................................................12

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir.
1980)...............................................................................................................................18

*Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016)...............................................14, 15

*Mead Johnson & Co. v. Abbott Labs*, 201 F.3d 883, 888 (7th Cir. 2000)............................21

*Morgan Stanley & Co., LLC v. Couch*, 134 F. Supp. 3d 1215, 1224-25 (E.D. Cal. 2015)...............15

*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022).................................................................15

*Neal v. Select Portfolio Servicing, Inc.*, No. 5:16-CV-04923-EJD, 2017 WL 4224871, at *4 (N.D.
Cal. Sept. 22, 2017).........................................................................................................17

*Nintendo of Am. V. Lewis Galoob Toys*, 16 F.3d 1032, 1036 (9th Cir. 1994).....................21

*Putian Authentic Enter. Mgt. Co., Ltd v. Meta Platforms, Inc.*, No. 5:22-CV-01901-EJD, 2022 WL

**OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER**

1034, at *4 (N.D. Cal. Apr. 19, 2022) .................................................................... 17

*Ramirez v. Sotelo*, No. ED CV 13-02155 SJO (MRWx), 2014 WL 12599799, at *5 (C.D. Cal. Feb. 3, 2014) .................................................................................................................... 20

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) .................................................................................................................... 18

*Sampson v. Murray*, 415 U.S. 61, 88 (1974) .................................................................. 18

*Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1226 (11th Cir. 2005) .................... 14

*SolarPark Korea Co.*, 2023 WL 4983159 at *5 .............................................................. 20

*Star Boxing, Inc. v. Tarver*, No. 02 CIV. 8446(GEL), 2002 WL 31867729 (S.D. NY. Dec. 20, 2002) .................................................................................................................... 19

*Star Boxing, Inc. v. Tarver*, No. 02 CIV. 8446(GEL), 2002 WL 31867729 at *6 (S.D. NY. Dec. 20, 2002) .................................................................................................................... 2

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) ............... 13

*Terrier, LLC v. HCAFranchise Corp.*, No. 2:22-cv-01325-GMN-EJY, 2022 WL 4280251, at *8 (D. Nev. Sept. 15, 2022) .................................................................................................. 18

*Terrier, LLC*, 2022 WL 4280251 at *9 .......................................................................... 21

*Williams v. Lazer*, 137 Nev. 437, 442, 495 P.3d 93, 98-100 (2021) .............................. 16

*Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008) ...................................... 12, 13

**STATUTES**

15 U.S § 6301 ............................................................................................................ 7

15 U.S.C. § 6301(9) .................................................................................................... 7

Ali Act, Pub.L. No. 106–210, § 3, 114 Stat. 321 (2000) ................................................ 7

**OTHER AUTHORITIES**

*Business Practices in the Professional Boxing Industry: Hearing on S. 2238* ...................... 7

**RULES**

Fed. R. Civ. P. 65(b)(1)(A) ......................................................................................... 13

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

{00228227}

5

**OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

# I.    <u>INTRODUCTION</u>

In 2024, GBP and VO entered into a Promotional Rights Agreement ("PRA") containing several unorthodox contract terms.  Amongst them, GBP was required to offer VO the choice of at least three opponents per bout (Sect. 3(i)),  GBP was required to work in good faith with all boxing promoters to maximize VO's exposure and revenue opportunities (Sect. 3(k)), GBP was required to allow VO's representatives to negotiate bouts with third parties (Sect. 3(k)), and GBP granted VO the right to withdraw from the PRA if GBP's contract with broadcaster, DAZN, was terminated or expired (Sect. 10(g)).  Thereafter, GBP breached those terms of the PRA and also allowed its DAZN contact to lapse, triggering VO's right to separate from GBP.  When GBP refused to accept VO's termination of the PRA, this suit by VO followed.

GBP now comes to Court seeking a Temporary Restraining Order to prevent VO from agreeing to participate in a highly anticipated boxing match against Jaron "Boots" Ennis to be promoted by a third party promoter. GBP plays the victim and claims that VO's agreement for a bout against Mr. Ennis would cause GBP irreparable harm.  The harm to GBP – if any – has solely been caused by GBP itself.  It is not 'harm' in the legal sense in that it does not flow from any improper action from VO, but rather VO's efforts to work with other promoters following termination of the PRA is the natural consequence of the terms to which GBP agreed.  Had GBP simply refused clause 10(g) or timely signed an extension with DAZN, Ortiz would not have possessed the right to terminate the PRA.

GBP cannot prove that it would suffer irreparable harm from VO's contemplated bout with Mr. Ennis, and can not satisfy the other *Winter* factors.  This Court must dissolve the temporary restraining order and deny GBP any further relief.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

## II.    FACTS

### A. Background Information and Terminology of Professional Boxing

VO does not assume that the Court is an expert of the professional boxing industry.  While expertise is not required to evaluate the issues presently before the Court, some background might be helpful.

Boxing is regulated by both state law and, for the moment, nationally, through the Muhammad Ali Boxing Reform Act ("Ali Act"), "to protect the rights and welfare of professional boxers on an interstate basis by preventing certain exploitive, oppressive, and unethical business practices...." Ali Act, Pub.L. No. 106–210, § 3, 114 Stat. 321 (2000).

The Ali Act explains that a promoter, like GBP, is "the person primarily responsible for organizing, promoting, and producing a professional boxing match." 15 U.S.C. § 6301(9).  During the Senate hearings on the Ali Act, attorney Fredric G. Levin explained the role of the promoter in the boxing industry: "The job of the promoter is to go out and get as much money as he possibly can get from television, from the site, from foreign rights, from sponsorships, etc., and then to pay the fighter as little as he possibly can. The reason for this is the difference goes to the promoter." *Business Practices in the Professional Boxing Industry: Hearing on S. 2238*, Before the S. Comm. On Commerce, Sci., and Transp. 105th Cong. 9 (Mar. 24, 1998).

As a counterweight to the promoter – who has a financial incentive to maximize profits by paying a boxer as little as possible – is the boxer's manager, who is "a person who receives compensation for service as an agent or representative of a boxer." 15 U.S § 6301. A manager is an advisor and a fiduciary to boxer and "is supposed to have some degree of independent judgment" from the promoter. *Business Practices in the Professional Boxing Industry: Hearing on S. 2238*, Before the S. Comm. On Commerce, Sci., and Transp. 105th Cong. 29 (Mar. 24, 1998).[1]

---

[1] For further boxing industry background, see *Franklin v. Haak*, No. 19-10137, 2020 WL 344848, at *6 (E.D. Mich. Jan. 21, 2020).

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

At present, there are only a handful of promoters with the industry connections, public following, and bankroll to put on world championship caliber boxing matches. The bulk of promoters' funding for any given fight comes from a broadcast fee from a television network or streaming service, and there are only a handful of networks regularly airing boxing. Of those, DAZN is the most prolific. It is a sports steaming service that features a boxing event nearly every weekend.

To assure fair and safe bouts, boxing is organized into divisions by weight. VO fights at 154 pound (junior middleweight). (Ortiz Decl. ¶1.) His professional record is 24 wins and zero losses and he is recognized as one of the best fighters in the world at his weight. (Ortiz Decl. ¶1.) Ring Magazine ("The Bible of Boxing") ranks VO number one in the world.[2] (Ortiz Decl. ¶1.) Ring Magazine ranks Mr. Ennis, VO's would-be opponent, number five in the world. A bout between VO and Mr. Ennis is highly anticipated by boxing fans and it has been called one of the "biggest fights to be made in 2026."[3]

**B. The PRA and Summary of Events Leading to VO's Lawsuit[4]**

In May 2024, VO and GBP executed a Promotional Rights Agreement (the "PRA") under which GBP was to promote VO's bouts for three more years, with minimum payments per fight exceeding one million dollars. (Ortiz Decl. ¶2, Ex. 1.)

The PRA contained a provision requiring GBP to work in good faith with other promoters as necessary to negotiate with VO's preferred opponents, and also allowing VO's representatives to directly negotiate with other promoters. (Sec. 3(k).) The same

---

[2] https://www.ringmagazine.com/fighters/rankings?org=ring

[3] https://www.dazn.com/en-US/news/boxing/ortiz-ennis-five-biggest-american-fights-2026-ortiz-ennis-lopez-stevenson-haney-garcia/1d34huvterxf1idgc2x6duy8w

[4] Ortiz incorporates by reference the totality of his Complaint (Doc. 1), which sets forth the relevant allegations in detail. Failure to include any specific fact from the Complaint in this summary is not a waiver thereof.

**OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

1  clause prevented GBP from engaging in negotiations behind VO's back by requiring
2  GBP to fully disclose the terms of any written offer and requiring VO to be a
3  signatory to any agreement related to him fighting. (Sec. 3(k).)

4         Following Ortiz' bout with Erickson Lubin in November 2025, Mr. Ennis
5  joined him in the ring for a face off and each boxer expressed their desire for the fight
6  to occur in early 2026. (Ortiz Decl. ¶¶3-4.) Ortiz instructed GBP to negotiate terms for
7  the bout with Mr. Ennis' promoter, Eddie Hearn of Matchroom Boxing. (Ortiz Decl.
8  ¶5; Mirigian Decl. ¶1.)

9         It was the hope of Ortiz that the bout, with Mr. Ennis, which was considered to
10  be one of the best matchups in the sport, would attract the eye of Turki Alalshikh, a
11  boxing fan and the chairman of Saudi Arabia's General Entertainment Authority. At
12  Mr. Alalshikh's direction, Saudi Arabia has been a significant sponsor of boxing
13  matches in the last few years, both in Riyadh and outside of K.S.A., such as the
14  September 2025 bout between Canelo Alvarez and Terence Crawford in Las Vegas.
15  (Mirigian Decl. ¶2.)

16         Instead of working "in good faith with all boxing promoters to assure that
17  Boxer maximizes his exposure and revenue opportunities," Mr. De La Hoya publicly
18  attacked Mr. Alalshikh and Zuffa Boxing, Mr. Alalshikh's new partnership with the
19  leadership of the UFC. In December 2025, Mr. De La Hoya posted to his Instagram
20  an expletive filled rant insulting the project and all involved. (Mirigian Decl. ¶3.)
21  Through this, and other actions, GBP actively undercut any opportunity to maximize
22  VO's potential earnings from Saudi-backed sponsorships. (Mirigian Decl. ¶4.)

23         In a December 2025 meeting between GBP and Mr. Mirigian, GBP presented
24  an offer for the bout with Mr. Ennis, and insisted – despite a PRA requirement that
25  VO be offered at least three potential opponents for any bout – that if VO did not
26  agree to the fight that he would be "benched" and not presented with any other
27  opportunity. GBP also threatened that it would publicly blame Ortiz and Mirigian for

28

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER**

the fight with Mr. Ennis not happening if VO did not agree to the sole offer presented. (Mirigian Decl. ¶5.)

During that same meeting, Eric Gomez, President of GBP, called Dr. Rakan AlHarthy, CEO of Saudi Arabian entertainment company Sela. With Mr. Mirigian on speakerphone, Mr. Gomez unsuccessfully pitched the fight between VO and Mr. Ennis for Sela sponsorship. (Mirigian Decl. ¶6.)

On December 12, 2025, Mr. Mirigian sent a direct message to Mr. Alalshikh on Instagram to ask if he had any interest in sponsoring the VO and Ennis bout.  Mr. Mirigian asked Mr. Alalshikh to contact Eric Gomez to discuss specifics.  (Mirigian Decl. ¶7; Ex. 1.) If Mr. Alalshikh saw the message from Mr. Mirigian, he did not acknowledge it or respond. (Mirigian Decl. ¶8.)

Later that same week, on December 15, Mr. Mirigian was part of an email exchange with Mr. Gomez and Ish Hinson, a boxing advisor to Mr. Alalshikh. (Mirigian Decl. ¶9; Ex. 2.)   Mr. Mirigian's attempts to communicate with Mr. Alalshikh were done with Mr. Gomez' knowledge, consent, and approval. (Mirigian Decl. ¶10.)

Although GBP did not disclose it to Mr. Mirigian during the December 2025 meeting, Mr. Mirigian later came to learn, through public comments of Mr. Hearn, that there had already been a meeting between GBP, Matchroom Boxing, and DAZN that resulted in a written agreement related to terms for the Ortiz/Ennis fight.  GBP never presented this document to Ortiz, again breaching its commitments in the PRA. (Mirigian Decl. ¶11.)

On January 8, 2026, Ortiz, by and through his counsel, sent a letter to GBP seeking confirmation that GBP's broadcast contract with DAZN had expired on December 31, 2025 and, if so, exercising Ortiz' right to terminate the PRA per section 10(g) thereof. (Smith Decl. ¶1, Ex. 1.)

On January 13, 2026, GBP, by and through its counsel, confirmed that the

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

GBP/DAZN agreement had concluded, but asserting that Ortiz did not have the right to terminate the PRA because "…in late October, Golden Boy and DAZN agreed on the material terms of a new Licence (sic) Agreement to cover calendar years 2026 and 2027 and have since exchanged several drafts of the long form agreement documenting those material terms." (Smith Decl. ¶2, Ex. 2.)

DAZN COO Ed McCarthy has also confirmed that there has not been a long-term broadcast distribution relationship between DAZN and GBP Since January 1, 2026. (McCarthy Decl. ¶5. Although DAZN did air a GBP promoted fight on January 16, 2026, and will show another on March 14, 2026, those events are "one off" shows and the parties had and have no commitments to each other beyond those specific events. In the agreement, dated February 17, 2026, both DAZN and GBP acknowledged and confirmed this fact. (McCarthy Decl. ¶5.)

## C. Actions Since VO's Lawsuit was Filed

Following the filing of VO's lawsuit on January 15, 2026 (Doc. 1), GBP took a series of actions intended to interfere with VO's prospective economic relations by chilling the market for VO's services as a boxer. For example, on January 16, 2026, GBP sent a cease and desist letter to Matchroom Boxing threatening legal action if Matchroom sought to sign an agreement with VO (the response to which is Exhibit 1 to Mr. Cestero's declaration in support of GBP's Motion). On January 28, 2026, apparently in response to a media report, GBP sent a similar cease and desist letter to Canelo Promotions. (Smith Decl. ¶3. Ex. 3)

Further, on January 29, 2026, GBP filed a lawsuit against VO's manager Rick Mirigian – himself a signatory to the PRA – in Los Angeles Superior Cout for Interference with Contract and Interference with Prospective Economic Advantage. (Smith Decl. ¶4; Ex. 4.) That Complaint is substantially similar to the Statement of Claim against VO submitted by GBP to JAMS for arbitration on February 4, 2026 (and attached to Mr Cestero's declaration). Importantly, GBP's lawsuit against Mr.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

Mirigian seeks the exact same damages as its arbitration against VO.

Undeterred, many promotors reached out to VO, through Mr. Mirigian, seeking to sign VO to promotional agreements of various structures. (Ortiz Decl. ¶6; (Mirigian Decl. ¶12.) For example, Ortiz was offered a three-bout agreement from Matchroom Boxing that included the April 18, 2026 bout against Mr. Ennis referenced in GBP's Motion. (Ortiz Decl. ¶7; Mirigian Decl. ¶13.) Although VO's exact compensation under that offer is dependent on the outcome and economic performance of the bouts, VO would receive at least twelve million dollars ($12,000,000). (Ortiz Decl. ¶8; Mirigian Decl. ¶14.) However, given Matchroom's projections for the economics of the offered bouts, it is likely that VO's earnings would approach twenty million dollars ($20,000,000) for the three fights. (Ortiz Decl. ¶8; Mirigian Decl. ¶14.) VO was also offered another three-bout deal by a different promoter that guaranteed him sixteen million dollars ($16,000,000), plus upside based on ticket and pay-per-view sales of the bouts. (Ortiz Decl. ¶9; Mirigian Decl. ¶15.) But for the Court issuing the TRO on February 13, 2026, one of those agreements would likely already be signed. (Ortiz Decl. ¶10; Mirigian Decl. ¶16.)

## III.    <u>LEGAL STANDARD</u>

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Fraihat v. U.S. Immigr. & Customs Enf't,* 16 F.4th 613, 635 (9th Cir. 2021) (quoting *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (citations omitted)). "The burden on the moving party is particularly heavy where, as here, granting a preliminary injunction would give the movant substantially the same relief it would obtain after a trial on the merits." *City of Los Angeles v. County of Kern*, 462 F.Supp.2d 1105, 1111 (C.D. Cal. 2006). A district court should enter a preliminary injunction only "upon a clear showing that the [moving party] is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008).

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

1    To obtain an injunction, the moving party "must establish that he is likely to

2  succeed on the merits, that he is likely to suffer irreparable injury in the absence of

3  preliminary relief, that the balance of equities tips in his favor, and that an injunction

4  is in the public interest." *Id.*

5    The Ninth Circuit uses a "'sliding scale' approach to preliminary injunctions."

6  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under that

7  approach, "'serious questions going to the merits' and a balance of hardships that tips

8  sharply towards the [moving party] can support issuance of a preliminary injunction,

9  so long as the [moving party] also shows that there is a likelihood of irreparable injury

10  and that the injunction is in the public interest." *Fraihat*, 16 F.4th at 636 (quoting *All.*

11  *for the Wild Rockies*, 632 F.3d at 1135) (citation modified).

12    A temporary restraining order may be issued upon a showing "that immediate

13  and irreparable injury, loss, or damage will result to the movant before the adverse

14  party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The purpose of such an

15  order is to preserve the status quo and to prevent irreparable harm "just so long as is

16  necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of*

17  *Teamsters*, 415 U.S. 423, 439 (1974). In determining whether to issue a temporary

18  restraining order, a court applies the same factors that guide the evaluation of a

19  request for preliminary injunctive relief. See *Winter*, 555 U.S. at 20; see also

20  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir.

21  2001) (analysis for temporary restraining orders and preliminary injunctions

22  "substantially identical").

23  **IV.   ARGUMENT**

24    **A. GBP IS UNLIKELY TO SUCCEED ON THE MERITS OF ITS**

25      **CLAIMS**

26    "Controlling precedent is clear that injunctive relief may not be granted unless

27  the [moving party] establishes the substantial likelihood of success criterion." *Schiavo*

28

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

*ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1226 (11th Cir. 2005). If the moving party's claims are "questionable" the likelihood of success criterion will not be satisfied. *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 340 (1999).

In *Don King Promotions, Inc. v. Mosley*, Case No. 15–61717–CV–WILLIAMS, 2015 WL 11198251 (S.D. FL August 25, 2025) the Court denied a promoter's motion for a preliminary injunction because it was not clear that the promoter could prevail. "On this record, it is unclear whether or not the contract has expired." *Id*. at *9. The Court observed, "In other cases enjoining professional athletes, there was no question regarding the duration of the contract and whether the contract, absent some other affirmative defense, was still in effect." *Id.*

Of course, that is not the case here, VO had to right to terminate the PRA and timely exercised the same. If the Court believes that VO has any likelihood of prevailing on either his claims of breach or the exercise of this terminate rights, then it cannot be "clear" that the PRA has any ongoing impact on the parties and GBP's claims are "questionable" – if not outright unlikely.

### 1. <u>Arbitration</u>

Simply put, whether or not the Court later grants GBP's Motion to Compel Arbitration has nothing to do with the merits of the causes of action that GBP asserts or their likelihood of success thereon.

However, there is a likelihood that – upon full briefing of that motion – the Court will find that GBP has waived its right to arbitration against VO by virtue of previously suing his manager, Mr. Mirigian, for the same claims and damages in Los Angeles Superior Court.

"The right to arbitration, like other contractual rights, can be waived." *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). Questions of arbitrability, such as whether a party's litigation conduct amounts to waiver of arbitration, are for "judicial

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

determination unless the parties clearly and unmistakably provide otherwise." *Id.* at 1123-24; see also *Morgan Stanley & Co., LLC v. Couch*, 134 F. Supp. 3d 1215, 1224-25 (E.D. Cal. 2015) (finding that it is presumptively for the Court to decide whether defendant waived arbitration rights).

As *Martin* explained, "A party that signs a binding arbitration agreement ... has a choice: it can either seek to compel arbitration or agree to litigate in court. It cannot choose both. A party may not delay seeking arbitration until after the district court rules against it in whole or in part; nor may it belatedly change its mind after first electing to proceed in what it believed to be a more favorable forum. Allowing it to do so would result in a waste of resources for the parties and the courts and would be manifestly unfair to the opposing party." *Martin* at 1128.

Traditionally, in the Ninth Circuit, arbitration rights were subject to waiver if three conditions were met: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).  However, in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022) the Supreme Court held that that the final requirement for prejudice or harm was not supported by the FAA. *Id.* at 416. ("Nine circuits, including the Eighth, have invoked 'the strong federal policy favoring arbitration' in support of an arbitration-specific waiver rule demanding a showing of prejudice. Two circuits have rejected that rule. We do too.")

In *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th Cir. 2023), the Ninth Circuit acknowledged that the *Morgan* holding required the Circuit's prior test to be simplified. "In view of *Morgan*, the party asserting waiver must demonstrate: (1) knowledge of an existing right to compel arbitration and (2) intentional acts inconsistent with that existing right." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023).

**OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

The Ninth Circuit has found the "intentional acts inconsistent with the right to arbitrate" element satisfied by a number of acts, such as filing an answer and seeking a preliminary inunction. See *FBC Mortg., LLC v. Skarg*, 699 F. Supp. 3d 837, 842 (N.D. Cal. 2023); See *Kelly v. Pub. Util. Dist. No. 2*, 552 Fed.Appx. 663, 664 (9th Cir. 2014).

In short, the forum in which the merits of GBP's claims are eventually heard should not factor into the Court's analysis here, but to the extent it does, the Court should recognize that there is as reasonable probability that this matter will not be subject to arbitration.

### 2.  Breach of Contract

GBP argues that is likely to prevail on the merits of its allegation that VO breached his contract by allegedly negotiating and contracting for bouts with third parties and by filing the present lawsuit.

As a gateway issue, it can never be a breach of contract for a party to file a lawsuit, even if the contract subject to the lawsuit contains an arbitration provision.

As explained above, the United States Supreme Court and the Ninth Circuit have affirmed that parties can and do waive arbitration rights, both explicitly and through their conduct. Both federal and Nevada statutes and case law allow parties to both challenge the scope and efficacy of arbitration clauses by taking action Court and, alternatively, moving to enforce them in Court. See, *Burch v. Second Jud. Dist. Ct.*, 49 P.3d 647, 650 (Nev. 2002); see also *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 686–87 (1996).  Further, the initiation of a lawsuit, even one that the Court believes should be subject to arbitration, itself triggers protection under Nevada's anti-SLAPP and litigation privilege jurisprudence.  See, *Williams v. Lazer*, 137 Nev. 437, 442, 495 P.3d 93, 98-100 (2021).

As for the allegations that VO breached the PRA, they are supported only by a conclusory declaration of GBP President, Mr. Gomez, that is itself plainly speculative

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

and countered by the declaration of Mr. Mirigian who plainly states that he only talked to Sela and/or Saudi-related persons with the approval and knowledge of Mr. Gomez.

Further, Mr. Gomez could not have prevented Mr. Mirigian from engaging in discussions with the Saudi's because Section 3(i) of the PRA authorized him to do so. "In the event that a third party promoter, broadcaster, or financier wants to negotiate a fight involving Boxer; Promoter, Boxer, and his representatives, will work in good faith to maximize the opportunity for all parties, including but not limited to, as necessary, by Promoter allowing Boxer's representatives to directly negotiate the bout with the third party."

To the extent that it is argued that VO's post-termination negotiations with third parties is a violation of the PRA, post-termination and post-filing cannot be grounds for a breach of the PRA because VO already exercised his right to terminate that agreement. See, *Kaldi v. Farmers Ins. Exch.*, 117 Nev. 273, 278, 21 P.3d 16, 19 (2001) in which the Nevada Supreme Court affirmed the trial courts finding that the defendant couldn't have breached an independent contractor agreement that the defendant had previously terminated.

### 3.  Intentional Interference with Contract

"[A]n intentional interference claim will not arise if 'the defendant's conduct consists of something which he had an absolute right to do.'" *Putian Authentic Enter. Mgt. Co., Ltd v. Meta Platforms, Inc.*, No. 5:22-CV-01901-EJD, 2022 WL 1171034, at *4 (N.D. Cal. Apr. 19, 2022) (quoting *Neal v. Select Portfolio Servicing, Inc.*, No. 5:16-CV-04923-EJD, 2017 WL 4224871, at *4 (N.D. Cal. Sept. 22, 2017)).

Here, there cannot be a likelihood that GBP will prevail on its claims because VO was absolutely within his rights to exercise his termination clause.  Moreover, according to the sworn statement provided by DAZN, GBP had the opportunity to extend its 2025 agreement with DAZN and opted not to.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER

1

2

3

4

5

6

7

8

9

10

11

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 4. <u>Interference with Economic Advantage</u>

GBP's claim is based on the belief that, "If Ortiz enters an agreement with third parties for the Ennis bout, DAZN may terminate its relationship with Golden Boy altogether." However, this has been directly and specifically undermined my DAZN itself. Ed McCarthy's declaration clearly and unambiguously states, "DAZN remains open to seeking to agree and enter into a long-term distribution agreement with GBP on commercially reasonable terms, whether or not GBP has Mr. Ortiz under contract." (McCarthy Decl. ¶9). Because DAZN is still willing to work with GBP, GBP cannot possibly prevail on this claim.

### B. GBP IS UNLIKELY TO SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF

"The basis of injunctive relief in the federal courts is irreparable harm and inadequacy of legal remedies." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) (citing *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). "[E]conomic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). "The Ninth Circuit has held that 'self-inflicted wounds are not irreparable injury.'" *Terrier, LLC v. HCAFranchise Corp.*, No. 2:22-cv-01325-GMN-EJY, 2022 WL 4280251, at *8 (D. Nev. Sept. 15, 2022) (quoting *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020).

GBP alleges that "If Ortiz enters into an agreement with third parties for the Ennis bout, monetary damages could not compensate Golden Boy for its lost broadcast relationships and agreements with DAZN and others, lost promotional opportunities, lost goodwill, and lost contractual leverage."

Of course, Mr. McCarthy's declaration at to the possibility of future contracts with DAZN significantly undermines GBP's position.

1    In support of this proposition, GBP cites to two cases involving professional

2  basketball players, but notably, zero cases involving boxers.

3    However, this Court should look for guidance to *Star Boxing, Inc. v. Tarver*,

4  No. 02 CIV. 8446(GEL), 2002 WL 31867729 (S.D. NY. Dec. 20, 2002).  There the

5  Court considered, and rejected, nearly the identical request brought by GBP. "Because

6  the Court finds that [promoter's] anticipated damages are predominantly monetary in

7  nature, and that the potential for any truly irreparable harm from [boxer's] breach

8  during the limited time period pending arbitration of the dispute is highly speculative,

9  the motion for a preliminary injunction will be denied." *Id.* at *1. Addressing issues of

10  reputation, industry relationships, and promotional opportunity, the Court ruled:

> Any harm [promoter] sustains as a result of any embarrassment or
> injury to its reputation among boxers and other industry players is also
> economic, in that it would affect its ability to sign other boxers and to
> arrange and effectively negotiate other fights. To the extent such
> reputational damage occurs, it is of a sort commonly assessed by courts
> and arbitrators and remedied through monetary awards. Moreover, the
> court credits expert testimony that the reputational damage arising from
> losing a star fighter is, in the absence of any accusations by the fighter of
> wrongdoing, modest, and reversible if and when the promoter vindicates
> his contractual rights in court or in an arbitration….Even where
> accusations of wrongdoing are circulated, as has not been the case here, it
> appears from the testimony that a promoter with ability can quickly
> recover and continue to attract top boxers.
>
> Any harm [promoter] suffers from the loss of the opportunity to
> make connections and develop its reputation among the large national
> players in the boxing industry is also essentially economic, but because
> the nature and magnitude of this injury are speculative, it is fairly
> arguable that damages would not be an adequate remedy.
>
> Id. at *3 (citations to record removed).

26    Importantly, in the PRA itself, GBP agreed that there was a possibility that,

27  even while he was under contract with GBP, VO might go fight for third party

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

promoters.  In Section 3(k) of the PRA, the parties agreed that under that scenario, GBP would receive a provision of services ("POS") fee equal to 25% of VO's purse for participating in the bout.  If VO fighting for another promoter was truly irreparably damaging, GBP would have never agreed to such a term, and would have required some form of non-monetary compensation.

The truth, as pointed out by Judge Lynch, in *Tarver* is that all GBP, or any promoter, has to gain or lose in the boxing business is money, and any damages can be compensated with the same.

## C. THE BALANCE OF THE EQUITIES TIPS IN FAVOR OF ORTIZ, NOT GBP

To qualify for the "drastic remedy" of a preliminary injunction, the balance of the equities must weigh in [moving party's] favor, if not sharply so.  *Munaf*, 553 U.S. at 689; *Winter*, 555 U.S. at 24; *SolarPark Korea Co*., 2023 WL 4983159 at *5. "In balancing equities between parties, the Court must weigh the effect of different harms to both parties, at its own discretion." *Ramirez v. Sotelo*, No. ED CV 13-02155 SJO (MRWx), 2014 WL 12599799, at *5 (C.D. Cal. Feb. 3, 2014). "The Court also examines the degree to which parties have acted in good faith, and particularly whether the moving party's need is self-imposed." *Id.*

As the Courts in *Tarver* and *Mosley* the only party to a boxing dispute that can truly be irreparably harmed if the fighter.  Due to short athletic primes, a delay of years or even months can change the career trajectory of a fighter forever. With elite fighters like VO, the consequences can be millions of dollars that simply cannot be earned later.  Promotion companies, on the other hand, can last forever, without a single fighter or a single bout substantially changing the arc of history.

The balance of the equities between the parties favors VO and disfavors further relief to GBP.

\ \ \

{00228227}                                        20

**OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

**D. AN INJUNCTION IS NOT IN THE PUBLIC INTEREST**

After considering the impact of the preliminary injunction on the parties themselves, the Winter test lastly requires a court to consider the impact on the public. When an injunction is narrow and limited only to the parties, with little to no impact on non-parties, "the public interest will be at most a neutral factor." *Terrier, LLC*, 2022 WL 4280251 at *9. But "when an injunction will impact non-parties and has the potential to impact the public, the public interest is relevant." *Id.*

Contrary to the position of GBP, the only interest the public has in this matter is in seeing the bout between VO and Mr. Ennis as soon as possible. Further delay or Court action preventing the fight contracts from being signed benefit absolutely no member of the public.

**E. IF ANY INJUNCTION ISSUES – AND IT SHOULD NOT – GBP SHOULD BE REQUIRED TO POST A BOND**

No TRO or preliminary injunction may issue unless "the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The purpose of this bond requirement is twofold: first, to ensure that a party that has been enjoined from some action that it is legally entitled to take has a source of compensation, and, second, to dissuade plaintiffs from "requesting injunctions on tenuous legal grounds." *Nintendo of Am. V. Lewis Galoob Toys*, 16 F.3d 1032, 1036 (9th Cir. 1994). Because the bond represents the only source for recovery if the injunction is later dissolved, it is essential that it represent the full value of damage suffered. Id.; see *Mead Johnson & Co. v. Abbott Labs*, 201 F.3d 883, 888 (7th Cir. 2000) (explaining why "when setting the amount of security, district courts should err on the high side").

While GBP has failed to show any basis for an injunction here, if an injunction were to issue, a bond of at least $16,000,000 is warranted given the multi-bout offers

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

1  that VO has outstanding and would be ready to complete, but for the Court's Order.

2  **V.    CONCLUSION**

3      For the reasons set forth above, Vergil Ortiz Jr. respectfully requests that the

4  Court dissolve the TRO and deny Golden Boy Promotions any further provisional

5  relief.

6

7  Date: February 17, 2026                    THE MALONEY FIRM, APC

8

9                                   By: _____

10                                      Gregory M. Smith, Esq.

11                                      Attorneys for Plaintiff,
                                        VERGIL ORTIZ, JR.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER**