Todd E. Kennedy, Nevada Bar No. 6014
Joanna M. Myers, Nevada Bar No. 12048
HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Pkwy., Suite 1000
Las Vegas, Nevada 89169
Telephone:    702-257-1483
Facsimile:    702-567-1568
Email: tkennedy@howardandhoward.com
Email: jmm@h2law.com


RICARDO P. CESTERO (CA SBN 203230)
(will comply with LR IA 11-2 within 14 days)
JONATHAN J. BOUSTANI (CA SBN 274748)
(will comply with LR IA 11-2 within 14 days)
ARRON J. PAK (CA SBN 341572)
(will comply with LR IA 11-2 within 14 days)
GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067
Telephone:    310-553-3610
Facsimile:    310-553-0687
Email: RCestero@ggfirm.com
Email: JBoustani@ggfirm.com
Email: APak@ggfirm.com

Attorneys for Defendant Golden Boy Promotions, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| VERGIL ORTIZ, JR.,<br><br>          Plaintiff,<br><br>     v.<br><br>GOLDEN BOY PROMOTIONS, LLC; and DOES 1-15, inclusive,<br><br>          Defendants. | Case No. 2:26-cv-00084-CDS-EJY<br><br>**DEFENDANT GOLDEN BOY PROMOTIONS, LLC'S REPLY IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER** |

17896-00646/5985180.3

## I. INTRODUCTION

In his Opposition (ECF No. 13) to Golden Boy Promotions, LLC's ("Golden Boy") Emergency Motion for a Temporary Restraining Order (ECF No. 11, "Motion"), Plaintiff Vergil Ortiz, Jr. ("Ortiz") confirms that Golden Boy was justified in seeking emergency interim relief and that an injunction is necessary to preserve the meaningfulness of arbitration and prevent irreparable harm to Golden Boy pending adjudication of the parties' contractual rights. Specifically, Ortiz admits that he has been engaged in unauthorized negotiations with third parties behind Golden Boy's back and claims that "[b]ut for the Court issuing the TRO on February 13, 2026," he already would have entered either a "three-bout agreement from Matchroom [Boxing USA LLC]" that included an April 18, 2026 bout with Jaron Ennis, or a separate three-bout agreement with an unspecified promoter. Opposition at p. 12. Ortiz's admitted conduct is an egregious breach of his exclusive three-year promotional rights agreement with Golden Boy (the "Promotional Agreement"). Nevertheless, Ortiz asks the Court to dissolve the TRO so that he may further breach the Promotional Agreement by entering a three-bout agreement with another promoter and fighting Ennis in two months before an arbitrator even has the opportunity to confirm that Ortiz's purported termination of the Promotional Agreement is invalid. If Ortiz enters a three-bout agreement with third parties, the pending arbitration would be moot. For the reasons set forth below and in the Motion, the Court should deny Ortiz's request and maintain the status quo via an injunction pending arbitration.

## II. ARGUMENT

### A. The Declaration of DAZN's Edward McCarthy Confirms that Ortiz's Purported Termination of the Promotional Agreement is Invalid and Ortiz has Breached the Promotional Agreement by Negotiating with Third Parties.

Ortiz claims that his unauthorized negotiations with third parties do not violate the Promotional Agreement because he purportedly terminated the agreement. According to Ortiz, the termination was valid because Golden Boy "granted [Ortiz] the right to withdraw from the [Promotional Agreement] if [Golden Boy's] *contract* with broadcaster, DAZN, was terminated or expired (Sect. 10(g))" and Golden Boy "breached those terms of the [Promotional Agreement]

and also allowed its DAZN *contact* [sic] to lapse, triggering [Ortiz's] right to separate from Golden Boy." Opposition at p. 6 (emphasis added). Tellingly, however, Ortiz does not quote Section 10(g), the critical provision of the Promotional Agreement that purportedly gave him the right to terminate. The reason for that glaring omission is clear. Contrary to Ortiz's assertions, Section 10(g) does *not* grant Ortiz "the right to withdraw from the [Promotional Agreement]" if Golden Boy's "contract" with DAZN "was terminated or expired." Instead, Section 10(g) only allows Ortiz to terminate the Promotional Agreement if Golden Boy's "distribution relationship" with DAZN terminates, providing in relevant part as follows:

> Promoter's **distribution relationship** with DAZN is a material incentive for Boxer to enter into this Agreement. In the event that Promoter's **distribution relationship** with DAZN terminates, for any reason, and Promoter does not have an agreement in principle in place for an exclusive **distribution relationship** with an alternative broadcaster, then Boxer shall have the right to terminate this Agreement.

*See* ECF No. 10-1 (emphasis added).

Golden Boy raised the key distinction between termination of a "relationship" and termination of a "contract" in its Motion (Motion at p. 5), but Ortiz continues to ignore this distinction and the actual language of Section 10(g) by incorrectly insisting that he may terminate the Promotional Agreement simply because the most recent long-term contract between DAZN and Golden Boy expired. Ortiz continues to conflate the terms "relationship" and "contract" because he knows that Golden Boy's "relationship" with DAZN has not terminated and, thus, he has no grounds for termination of the Promotional Agreement under Section 10(g).

Indeed, the Declaration of DAZN's Chief Operating Officer, Edward McCarthy, confirms that Golden Boy's relationship with DAZN has not terminated. McCarthy confirms that DAZN entered into broadcast agreements with Golden Boy for boxing events on January 16, 2026 and March 14, 2026—*i.e.*, after Ortiz purportedly terminated the Promotional Agreement on January 8, 2026. ECF No. 13-4 at ¶ 5. McCarthy further testifies that "through the present, [Golden Boy] and DAZN have been discussing terms for a new contract under which the parties could continue their long-term broadcast distribution relationship" and "material terms and drafts were well progressed." *Id.* at ¶¶ 6-7. In other words, the "relationship" between DAZN and Golden Boy has not terminated because they are still entering short-term agreements while negotiating a new

1 long-term agreement. Ortiz's suggestions to the contrary and his misrepresentations regarding the actual language of Section 10(g) are nothing more than thinly veiled attempts to manufacture a valid basis for terminating the Promotional Agreement.

Ortiz also argues that his unauthorized negotiations with third parties do not constitute a breach of the Promotional Agreement because Golden Boy "was required to allow [Ortiz's] representatives to negotiate bouts with third parties" and Golden Boy could not prevent Ortiz's manager from engaging in such negotiations. *See* Opposition at pp. 6, 8, & 17. Once again, Ortiz misrepresents the language of the Promotional Agreement, which requires Ortiz "to direct any and all inquiries they may receive from potential opponents to Promoter for purposes of negotiating the terms of a potential bout with Boxer" and, "[i]n the event that a third party promoter, broadcaster, or financier wants to negotiate a fight involving Boxer … Promoter, Boxer, and his representatives will work in good faith to maximize the opportunity for all parties, including but not limited to, *as necessary*, by *Promoter allowing* Boxer's representatives to directly negotiate the bout with the third party." ECF No. 10-1 at Ex. A (¶ 3(k), emphasis added). Here, Ortiz never sought permission from Golden Boy to directly negotiate with Matchroom or the other unnamed promoter referenced in the Opposition. More importantly, at no time during negotiations with Golden Boy for the Ennis fight did Matchroom ever suggest that it wanted to negotiate directly with Oritiz's manager, Mirigian. Certainly, Golden Boy never "allow[ed] [Ortiz's] representatives to directly negotiate" any bouts without Golden Boy.

### B. Golden Boy Will Suffer Irreparable Harm and Non-Monetary Damages if the TRO is Dissolved.

In its Order issuing the TRO, the Court found that "Golden Boy's allegations support a finding that it is facing an imminent harm" where "Golden Boy contends that if Ortiz enters into an agreement with third parties for the Ennis bout, monetary damages could not remedy Golden Boy's lost broadcast relationships and agreements with DAZN and others." ECF No. 11 at p. 7. As Ortiz admits in his Opposition, the Court's issuance of the TRO is the only reason he has not already signed a new three-bout agreement with Matchroom Boxing USA LLC ("Matchroom") or another third party. However, Ortiz argues that, even if he further breached the Promotional

Agreement by signing a three-bout agreement with a third party, the resulting harm to Golden Boy would be fully compensable by monetary damages. That is not the case for several reasons.

<u>First</u>, Ortiz's claim that "McCarthy's declaration at the possibility of future contracts with DAZN significantly undermines [Golden Boy's] position" regarding irreparable harm is unavailing. McCarthy's declaration regarding DAZN's intentions is misleading and incomplete. In his declaration, **McCarthy fails to disclose that he is also a manager and/or member of Matchroom, the promoter with whom Ortiz has been negotiating a replacement three-bout deal**. Gomez Decl. ¶ 7, Ex. 1. Moreover, earlier today, Matchroom and DAZN announced a new five-year exclusive broadcast contract, which means that, if Matchroom signs Ortiz, DAZN will receive the benefit of the three-bout agreement with Ortiz. *Id.* at ¶ 7, Ex. 2. Accordingly, McCarthy and DAZN have a clear interest in the Court dissolving the TRO so that Ortiz may sign a new agreement with Matchroom.

As Ortiz admits, DAZN is the "most prolific" broadcaster in the boxing world. Opposition at p. 8. Accordingly, Golden Boy's relationship and agreements with DAZN are critical to Golden Boy's business. By the time of Golden Boy's last distribution agreement with DAZN expired on December 31, 2025, Golden Boy and DAZN had agreed upon the material terms for a new distribution agreement for 2026-27 and DAZN was considering a revised draft of the proposed long-form contract that Golden Boy had circulated don December 15, 2026.[1] Gomez Reply Decl.") ¶¶ 2-4. On January 13, 2026, DAZN's Senior Vice President, Jared Kass suggested that he and Golden Boy's president, Eric Gomez, have a call to work through the final points on the long form contract. *Id.* at ¶ 5. The next day, Ortiz filed this lawsuit. Since this lawsuit was filed, DAZN has refused to finalize the terms of the long form contract that was almost fully negotiated as of December 15, 2025 and DAZN has made clear that they will not agree to a new long-term license agreement with Golden Boy unless Golden Boy provides a full

---

[1] Ortiz's claim that Golden Boy could have avoided termination of the Promotional Agreement if it had agreed to temporarily extend its last distribution agreement with DAZN pending negotiation of a 2026-27 distribution agreement is a red herring. There was no benefit to Golden Boy in extending the previous distribution agreement because there were no remaining funds under that agreement to finance any new bouts. *See* Reply Declaration of Eric Gomez ("Gomez Reply Decl.") ¶ 13.

and complete waiver of claims related to this lawsuit and Ortiz generally. *Id.* at ¶ 6. But for Ortiz's purported termination of the promotional contract between him and Golden Boy, as well as the instant lawsuit, the distribution relationship with DAZN would have continued unimpeded. *Id.* at ¶ 9.

Absent the TRO, Ortiz will enter a three-bout agreement with Matchroom or third parties, which would materially impair Golden Boy's negotiations with DAZN and potentially prevent Golden Boy from reaching a new distribution deal with DAZN. *Id.* at ¶ 9. McCarthy's speculative testimony that DAZN is "open to seeking to agree and enter into a long-term distribution agreement with [Golden Boy] on commercially reasonable terms, whether or not [Golden Boy] has Mr. Ortiz under contract" is not an enforceable agreement and does not indicate that the parties will actually reach an agreement. As the Court has already recognized in its Order on the Motion, the damage to and possible termination of Golden Boy's relationship and agreements with DAZN, the premier broadcaster of boxing events, is exactly the type of non-monetary harm that warrants a TRO until the arbitrator can address the parties' claims. Moreover, the arbitrator's ability to award meaningful relief would be several compromised without the TRO.

Second, Ortiz ignores that fact that he has already admitted and agreed that his "services in connection with the Bouts are of a special, unique, unusual, and extraordinary character giving them peculiar value, the loss of which cannot be reasonably or adequately compensated by damages in an action at law and could cause Promoter irreparable damage and injury." ECF No. 10-1 at Ex. A (¶ 12(b)). This admission alone demonstrates the flaw in Ortiz's analysis. At the time Ortiz signed the Promotional Agreement he fully understood that, should he breach the agreement, Golden Boy would be entitled to seek injunctive relief to remedy the injuries that would be caused by that breach. Having agreed that Golden Boy would be entitled to such relief, Ortiz cannot now be heard to deny that irreparable injury.

Third, Ortiz fails to address the analogous Circuit-level case law cited in the Motion establishing that sports organizations may suffer irreparable harm if their star athletes breach contracts with their organizations by signing new contracts to play for other teams. *See* Motion at

pp. 12-13; *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064 (2d. Cir. 1972); *Boston Celtics Ltd. P'ship v. Shaw*, 908 F.2d 1041 (1st Cir. 1990).

Fourth, the district court decision cited by Ortiz in support of his position—*Star Boxing, Inc. v. Tarver*, No. 02 CIV. 8446(GEL), 2002 WL 31867729 (S.D.N.Y. Dec. 20, 2002)—is readily distinguishable from this case. In *Star Boxing*, the court's irreparable harm analysis relied on its finding that "all that is at stake here is a single fight" and if "SBI indeed has continuing rights under its agreement to Tarver, they will be restored in arbitration." *Id.* at *5. Here, Ortiz intends to sign a three-bout agreement with third parties that would eviscerate any potential enforcement of the remainder of Golden Boy's rights under the Promotional Agreement. If Ortiz signs that agreement, Golden Boy would lose its exclusive promotional rights, lose control over the marquee Ennis bout, and lose value of a fighter of Ortiz's stature as part of its ongoing broadcast negotiations with DAZN. Moreover, if Ortiz fights Ennis or another boxer in two months without Golden Boy's approval and loses, Golden Boy's interests would be damaged to an extent difficult to calculate. This harm to Golden Boy cannot be fully compensated by monetary damages or an arbitration award after the fact.

In light of the foregoing, Golden Boy has established that it will suffer irreparable harm if the Court dissolves the TRO before the arbitrator address the parties' claims.

### C.    The Remaining *Winter* Factors for a TRO are Satisfied and No Bond Should be Required.

As the Court already determined in its Order issuing the TRO, "Golden Boy has at least a 'fair chance of success on the merits' of this case." ECF No. 11 at p. 7 (citing *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 424 (9th Cir. 1991)). Even if the subject claims were not subject to arbitration (they are[2]), Ortiz's purported termination of the Promotional Agreement is invalid and, as a result, Ortiz's negotiations with third parties for future bouts constitute clear breaches of the Promotional Agreement and interference with Golden Boy's current and prospective contractual rights with

---

[2] Ortiz suggests that Golden Boy has waived its right to arbitration against Ortiz by filing a lawsuit against Ortiz's manager, Mirigian, but he fails to cite any persuasive authority to that effect. Golden Boy has filed an arbitration demand against Ortiz and moved to compel arbitration in this action. Golden Boy has not waived its right to arbitration against Ortiz.

1  DAZN and others. Additionally, as noted by the Court, the balance of equities supports
2  maintenance of the TRO where Golden Boy would suffer irreparable harm if the TRO is dissolved
3  and "temporary relief will not cause significant hardship to Ortiz because, by its nature, its
4  temporary, and the contract dispute with Golden Boy is ongoing." ECF No. 11 at p. 7. Moreover,
5  Golden Boy is ready, willing, and able to arrange the Ennis bout and continue promoting Ortiz
6  while this dispute is arbitrated. Finally, "there is a public interest in both enforcing valid arbitration
7  agreements and in private parties being permitted to expeditiously investigate and pursue claims
8  related to business practices." *Id.* at p. 8. In light of the likelihood of Golden Boy's success on the
9  merits and the lack of harm to Ortiz if a TRO issues for a relatively short time, Golden Boy should
10 not be required to post a bond, let alone the $16,000,000 bond proposed by Ortiz. This is especially
11 true where Ortiz has failed to present any admissible evidence of the purported $16,000,000 three-
12 bout offer or any other offer.

### III.  **CONCLUSION**

For the foregoing reasons, Golden Boy requests that the Court allow the TRO remain in place to preserve the status quo pending arbitration and waive any requirement for Golden Boy to post a bond as security for issuance of the TRO.

| | |
|---|---|
| DATED:  February 18, 2026 | HOWARD & HOWARD ATTORNEYS, PLLC |
| | |
| | By: /s/ Todd E. Kennedy, Esq. |
| | TODD E. KENNEDY, Nevada Bar No. 6014<br>JOANNA M. MYERS, Nevada Bar No. 12048<br>HOWARD & HOWARD ATTORNEYS, PLLC<br>3800 Howard Hughes Pkwy., Suite 1000<br>Las Vegas, Nevada  89169<br>Telephone:      702-257-1483<br>Facsimile:       702-567-1568<br>Email: tkennedy@howardandhoward.com<br>Email: jmm@h2law.com |
| | RICARDO P. CESTERO (CA SBN 203230)<br>(will comply with LR IA 11-2 within 14 days)<br>JONATHAN J. BOUSTANI (CA SBN 274748)<br>(will comply with LR IA 11-2 within 14 days)<br>ARRON J. PAK (CA SBN 341572)<br>(will comply with LR IA 11-2 within 14 days)<br>GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California  90067<br>Telephone:      310-553-3610<br>Facsimile:       310-553-0687<br>Email: RCestero@ggfirm.com<br>Email: JBoustani@ggfirm.com<br>Email: APak@ggfirm.com |
| | *Attorneys for Defendant Golden Boy Promotions, LLC* |

**CERTIFICATE OF SERVICE**

I certify that on February 18, 2026, I served the above on all counsel of record in this action using the Court's CM/ECF electronic filing and service facility.

/s/ Todd E. Kennedy, Esq.
An employee of Howard & Howard